[Cite as *State v. Plotts*, 2011-Ohio-900.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# VAN WERT COUNTY

STATE OF OHIO,                                          CASE NO. 15-10-08

   PLAINTIFF-APPELLEE,

 v.

JOHN PLOTTS,                                            O P I N I O N

   DEFENDANT-APPELLANT.


Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-09-12-184

Judgment Affirmed

Date of Decision:  February 28, 2011


APPEARANCES:

   *William F. Kluge* for Appellant

   *Kevin H. Taylor* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, John Plotts, appeals the judgment of the Court of Common Pleas of Van Wert County, convicting him of arson, aggravated arson, and insurance fraud. On appeal, Plotts contends that the trial court committed plain error by admitting physical evidence for which the State did not sufficiently demonstrate the chain of custody. Plotts also contends that he received ineffective assistance of counsel, and was prejudiced as a result. Finding that a sufficient chain of custody was established as to all of the physical evidence and that Plotts was provided effective assistance of counsel, we affirm the judgment of the trial court.

{¶2} In September 2009, the Van Wert County Grand Jury indicted Plotts on Count One, aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree; Count Two, aggravated arson in violation of R.C. 2909.02(A)(2), a felony of the second degree; Count Three, arson in violation of R.C. 2909.03(A)(2), a felony of the fourth degree; Count Four, insurance fraud in violation of R.C. 2913.47(B)(1),(C), a felony of the fourth degree; Count Five, aggravated arson in violation of R.C. 2909.02(A)(1), a felony of the first degree; Count Six, aggravated arson in violation of R.C. 2909.02(A)(2), a felony of the second degree; Count Seven, arson in violation of R.C. 2909.03(A)(2), a felony of the fourth degree; Count Eight, insurance fraud in violation of R.C.

2913.47(B)(1),(C), a misdemeanor of the first degree. The indictment arose from two separate fires at Plotts' residence on April 8, 2009, and April 10, 2009, for which he attempted to collect insurance proceeds from Erie Insurance Company ("Erie").

{¶3} In December 2009, Plotts entered a plea of not guilty as to all counts in the indictment, and in June 2010, the case proceeded to jury trial, during which the following pertinent testimony was heard.

{¶4} Plotts testified that on April 8, 2009, he resided at his residence, located at 630 Monroe, Van Wert, Ohio; that he left his residence for class in Lima, Ohio, driving a green car; that he returned home to retrieve a book; that upon arrival, he discovered his residence on fire, and called 9-1-1 on his cell phone; that after the fire was under control, he met with Frank Ritemeyer, an Assistant State Fire Marshal; that he signed a consent form allowing Ritemeyer to enter the residence, inspect it, and collect evidence; that upon exiting the residence, the front door was locked; and, that as a result of the fire, he made a claim with his home insurance provider, Erie, representing to them that he had no active role in starting the fire.

{¶5} Plotts further testified that on April 9, 2009, he met with Rick Spencer, a licensed investigator specializing in fires, and Doug Kristof, a forensic

engineer specializing in electrical engineering; and, that Spencer and Kristof toured the home.

{¶6} Plotts further testified that on April 10, 2009, he met with Nate Swartz, an estimator with Swartz Contracting, and Brad Case, a manager with ServiceMaster, at his residence; that they visually inspected the damage throughout the residence; and, that upon completion of the inspection they left the residence, locking the front door.

{¶7} Cody Fife, a resident of Van Wert, Ohio, testified that, on April 8, 2009, he was locked out of his home; that as he waited on his porch for his wife, Karri Fife, he noticed a green car circling the block; that upon his wife's return home, they took his wife's car and followed the green car; that, eventually, the green car pulled into a driveway located on Monroe Street; and, that, shortly thereafter, he heard fire engines approaching the area.

{¶8} Karri testified that, on April 8, 2009, upon returning home, Cody and her followed a green car circling the block; that, eventually, the green car pulled into a driveway, and a man stepped out and walked toward the home with a cell phone out; and, that, shortly thereafter, the fire department arrived at the home where the green car had parked.

{¶9} Chief James Steele of the Van Wert Fire Department testified that, on April 8, 2009, he responded to a fire at Plotts' residence; and, that after the scene was secured he waited at the residence until Ritemeyer arrived.

{¶10} Nate Swartz testified that, on April 10, 2009, he met with Case and Plotts at Plotts' residence to survey the damage caused by the first fire; that all three men toured the residence together, and were never separated until they left the residence; that he took pictures of the residence; and, that, at some point after the walk-through, he was contacted by Spencer to place a new lock on the front door, which was accomplished.

{¶11} Patrick Freeman, firefighter for the Van Wert Fire Department, testified that, on April 10, 2009, he responded to a fire at Plotts' residence; and, that once the fire had been suppressed, the scene was secured with fire tape, and he waited for Ritemeyer.

{¶12} Ritemeyer testified that, on April 8, 2009, he received a call about a house fire in Van Wert; that he presented a consent form to Plotts to enter the residence, inspect it, and collect evidence; that the heaviest fire damage was located in the living room; that he slightly moved a burned sweatshirt lying near the entertainment center, which was located in the living room, so he could photograph the sweatshirt; that he moved the entertainment center away from the

wall and back again; and, that he did not collect any physical evidence from Plotts' residence on that day.

{¶13} Ritemeyer further testified that he returned to the residence, on April 10, 2009; that, on that day, he did another inspection of the residence; and, that the heaviest fire damage was located in the master bedroom.

{¶14} Kristof testified that he met with Spencer, on April 9, 2009, to investigate the cause of the fire at Plotts' residence; that neither Spencer nor he removed any physical evidence from the residence; and, that upon exiting the residence he locked the front door.

{¶15} Kristof further testified that he returned to Plotts' residence on April 23, 2009, to continue his investigation; that he helped Spencer place all the items of interest from the living room into plastic bags; that the items included a blue electric box, an electrical outlet, a power cord for a Sony television, a circuit breaker, a bag of electric wires, a bag of debris, a television stand, a Sony television, a video game cartridge, a power supply unit, a Sony Play Station 3, a Direct T.V. satellite receiver, a Sony DVD player, a power strip, a cable and power cord for Direct T.V., a V-tec video game controller, a video game, an electro-mechanical device, miscellaneous wire debris, a game controller, a sweatshirt, and a remote control; and, that he never took custody or removed the physical evidence from Plotts' residence.

{¶16} Spencer testified that he took pictures of Plotts' residence, on April 8, 2009, after the fire; that he met with Kristof, on April 9, 2009, to investigate the cause of the first fire; that neither Kristof nor he removed any physical evidence from the residence on that day; that exterior windows of Plotts' residence were boarded-up with plywood; and, that upon exiting the residence the front door was locked.

{¶17} Spencer further testified that he returned to Plotts' residence, on April 23, 2009, to continue his investigation; that he had all the physical evidence located in, on, and around the living room television stand placed into plastic bags; that no one present at Plotts' residence, on April 23, 2009, took any physical evidence from the residence; that the residence stayed locked until he gathered the physical evidence on May 7, 2009; that all the physical evidence was left at Plotts' residence until May 7, 2009, when he retrieved it and took it to his personal storage facility, which he locked; that, on May 26, 2009, he took the evidence to SEA, Ltd ("SEA") for investigation; that he was present and oversaw Kristof and Randy Bills, a forensic engineer at SEA, during the investigation; that upon completion of the investigation he transported all of the physical evidence back to his storage facility, which he locked; and, that all of the physical evidence was locked in his storage facility from that time until he brought it to the Van Wert County Court House in June 2010, for trial.

{¶18} Ralph Kisor, an investigator with Erie, testified that Plotts called Erie to submit claims for both fires; that the first fire caused $77,863.41 in damage, and the second fire caused $51,951.42 in damage.

{¶19} At the close of the trial, the court asked Plotts if he objected to the admission of any of the physical evidence presented at trial. Plotts did not object, and the physical evidence was admitted into evidence.

{¶20} The jury returned a verdict convicting Plotts on all eight counts. The trial court proceeded to find that Counts One, Two, and Three were allied offenses and merged them into Count One for sentencing purposes. The trial court also found Counts Five, Six, and Seven were allied offenses and merged them into Count Five for sentencing purposes. The trial court then sentenced Plotts to a three-year prison term for Count One; an eighteen-month prison term for Count Four; a three-year prison term for Count Five; and, a six-month prison term for Count Eight.

{¶21} It is from this judgment Plotts appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE CHAIN OF EVIDENCE FOR ALL PHYSICAL EXHIBITS WAS NOT ESTABLISHED BY PROOF BEYOND A REASONABLE DOUBT.**

*Assignment of Error No. II*

**COUNSEL FOR THE APPELLANT FAILED TO PROVIDE REASONABLE REPRESENTATION AND WAS INEFFECTIVE IN REPRESENTING THE APPELLANT.**

*Assignment of Error No. I*

**{¶22}** In his first assignment of error, Plotts contends that the admission of physical evidence from the scene of the fires was plain error. Specifically, he contends that the State failed to sufficiently establish the chain of custody as to the physical evidence, and thus admission of the evidence resulted in plain error. We disagree.

**{¶23}** A trial court is vested with broad discretion in the admission of evidence. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 164. Its evidentiary rulings will not form the basis for a reversal on appeal absent a clear abuse of discretion, which is materially prejudicial to the appellant. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265. We note, however, that the abuse of discretion standard does not apply in the case sub judice, as Plotts did not object to the admission of the physical evidence. Accordingly, we review for plain error. *State v. Coats*, 3d Dist. Nos. 10-10-05, 10-10-06, 2010 -Ohio- 4822, ¶20.

**{¶24}** In order to have plain error under Crim.R. 52(B) there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." *State v. Barnes*, 94 Ohio St.3d 21, 27,

2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 431, 1997-Ohio-204; see *State v. Johnson*, 3d Dist. No. 2-98-39, 1999-Ohio-825.

{¶25} Evid. R. 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A chain of custody is part of the authentication and identification mandate set forth in the rule, and the State has the burden of establishing the chain of custody of a specific piece of evidence before it can be admitted at trial. *State v. Brown* (1995), 107 Ohio App.3d 194, 200.

{¶26} "[A] strict chain of custody is not always required in order for physical evidence to be admissible." *State v. Wilkins* (1980), 64 Ohio St.2d 382, 389. Rather, "[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." *Brown,* 107 Ohio App.3d at 200, citing *State v. Blevins* (1987), 36 Ohio App.3d 147, 150. Further, any breaks in the chain of custody after establishment of such a reasonable certainty go to the weight afforded the evidence rather than its admissibility. Id.

{¶27} The testimony at trial sets forth a sufficient chain of custody. After both fires, Plotts' residence was secured by the fire department. Individuals entering the residence immediately following the fires did so to investigate the fires' cause and survey the damage. As to those initial investigations, Ritemeyer, Kristof, and Spencer testified that they removed nothing from the residence, while Swartz and Case testified that they only conducted a visual inspection of the residence, taking pictures of the damage.[1] In addition, several witnesses testified that the residence was locked upon their departure.

{¶28} On April 23, 2009, the physical evidence was placed into plastic bags by Kristof and Spencer. However, both men testified that none of the physical evidence was removed from Plotts' residence that day. Spencer testified that Plotts' residence was locked until he returned there on May, 7, 2009, to retrieve the physical evidence bagged in late April.[2]

{¶29} After retrieving the physical evidence from Plotts' residence, Spencer placed the evidence in his personal storage facility, which he locked. From that point on, Spencer maintained custody of all the physical evidence

---

[1] We note that the record did reflect some slight movement of debris and physical evidence during the investigation of the fires, such as Ritemeyer's slight movement of the sweatshirt. We, however, do not find these movements to constitute the type of substitution, alteration or tampering required to invalidate the chain of custody, as there was testimony that prior to any movement the scene was photographed and that such movements are necessary to properly and thoroughly investigate the cause of the fire.

[2] We note that while Spencer could not have known that the residence was continually locked between April 23, 2009, and May 7, 2009, nothing in the record suggests that anyone unlocked, or otherwise entered Plotts' residence during that period of time. Accordingly, there is no evidence in the record to suggest any substitution, alteration or tampering took place during that period of time.

retrieved from Plotts' residence, until he delivered it to the Van Wert County Court House for trial.

{¶30} In light of the following, we find that the State, with reasonable certainty, established that no substitution, alteration or tampering occurred with regard to the physical evidence presented at trial. And although the chain of custody is not pristine in the case sub judice, and it rarely is, Plotts has failed to identify evidence within the record, which demonstrates substitution, alteration or tampering of the physical evidence. Rather, Plotts' argument addresses the weaknesses, or breaks, in the chain of custody, in particular, the period of time the physical evidence remained in his residence after the fire, but before Spencer took the evidence into his custody on May 7, 2009. Any weaknesses in the chain, however, go to the weight of the evidence, not its admissibility.

{¶31} Having found that the State presented sufficient evidence to establish the chain of custody, we cannot say that the trial court committed plain error by allowing the physical evidence from Plotts' residence to be introduced at trial.

{¶32} Accordingly, we overrule Plotts' first assignment of error.

*Assignment of Error No. II*

{¶33} In his second assignment of error, Plotts contends that he was denied effective assistance of counsel. Specifically, he contends that trial counsel failed to call expert witnesses, inappropriately alluded to a conspiracy between the

insurance companies and independent contractors, failed to effectively cross-examine eyewitnesses, and, failed to challenge the absence of proof of loss forms in evidence. We disagree.

**{¶34}** An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355.

**{¶35}** Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting *Smith v. Murray* (1986), 477 U.S. 527.

**{¶36}** First, Plotts contends that trial counsel was ineffective because he did not call an expert to the stand, and thus relied solely on cross-examination. The decision to call an expert is a matter of trial strategy. *State v. Thompson* (1987), 33 Ohio St.3d 1, 10-11. The failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 436. Accordingly, we do not find this issue prejudicial to Plotts.

**{¶37}** Second, Plotts contends that trial counsel was ineffective because he alluded to a conspiracy between the insurance companies and independent contractors. Attorneys licensed by the State of Ohio are presumed to provide competent representation, *State v. Pierce,* 3d Dist. No. 11-09-05, 2010-Ohio-478, ¶33, citing *State v. Hoffman* (1998), 129 Ohio App.3d 403, 407, thus we must afford a high level of deference to the performance of trial counsel. *Bradley,* 42 Ohio St.3d at 142. Trial counsel's allusion to a possible conspiracy falls within the realm of trial strategy. Perhaps trial counsel was attempting to highlight the close working relationship among insurance companies and independent contractors in an attempt to demonstrate bias. Whatever the reason for counsel's allusion to a conspiracy, we do not find counsel's strategy prejudicial to Plotts.

**{¶38}** Third, Plotts contends that trial counsel was ineffective because he did not have Karri or Cody identify Plotts as the driver of the green car at trial.

-14-

Close review of the record reveals that Karri and Cody were asked whether they saw the driver of the green car. Karri stated that she saw the driver from a distance, but if given the opportunity, she would not be able to recognize the driver if she saw him again. Cody, on the other hand, stated that he did not see the driver exit the car. From his testimony, a trier-of-fact could infer that Cody, if given an opportunity, would be unable to identify the driver. Consequently, trial counsel's failure to ask Karri and Cody to identify whether Plotts was the driver of the green car, would have added little to the trial, as both witnesses testified as either not being able to identify the driver or never seeing the driver. Accordingly, we do not find counsel's failure to ask Karri and Cody whether Plotts was the driver of the green car prejudicial to Plotts.

**{¶39}** Finally, Plotts contends that trial counsel was ineffective because he did not challenge the State's failure to submit proof of loss forms from either fire. The State, however, was not required to submit a written proof of loss form to prove Plotts committed insurance fraud, because the crime can be committed via an oral statement. The offense of insurance fraud provides as follows:

> **(B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:**
>
> **(1) Present to, or cause to be presented to, an insurer any written or *oral statement* that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that**

**the statement, or any part of the statement, is false or deceptive. [Emphasis Added]**

**(C) Whoever violates this section is guilty of insurance fraud. Except as otherwise provided in this division, insurance fraud is a misdemeanor of the first degree. If the amount of the claim that is false or deceptive is five hundred dollars or more and is less than five thousand dollars, insurance fraud is a felony of the fifth degree. If the amount of the claim that is false or deceptive is five thousand dollars or more and is less than one hundred thousand dollars, insurance fraud is a felony of the fourth degree. If the amount of the claim that is false or deceptive is one hundred thousand dollars or more, insurance fraud is a felony of the third degree.**

R.C. 2913.47(B)(1),(C).

{¶40} In the case sub judice, Ralph Kisor, an investigator with Erie, testified that Plotts called Erie to file claims for both fires. Accordingly, the claims were filed orally, which is sufficient to support a conviction of insurance fraud, pursuant to R.C. 2913.47(B)(1). In addition, Kisor testified that the damage caused by the fires totaled $77,863.41 and $51,951.42, respectively. Thus, the record contained enough evidence for the jury to convict Plotts on both counts of insurance fraud. Consequently, Plotts' trial counsel did not error when he failed to challenge the absence of proof of loss forms, because Plotts submitted the claims orally. Accordingly, we find counsel's failure to challenge the absence of the proof of loss forms did not prejudice Plotts.

{¶41} Consequently, because we find no error in trial counsel's failure to call experts, allusion to conspiracy among the insurance companies and

independent contractors, failure to ask Karri and Cody to identify Plotts at trial, or failure to challenge the absence of proof of loss forms, we find no error in trial counsel's performance.

{¶42} Accordingly, we overrule Plotts' second assignment of error.

{¶43} Having found no error prejudicial to Plotts herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jnc**