[Cite as *State v. Bell*, 2013-Ohio-1299.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  13-12-39

      v.

DEMARIS D. BELL,
                                   **O P I N I O N**

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11 CR 0204

**Judgment Affirmed**

Date of Decision:   April 1, 2013

APPEARANCES:

    *John M. Kahler, II* for Appellant

    *Derek W. DeVine and Brian O. Boos*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Demaris Bell, appeals the judgment of the Court of Common Pleas of Seneca County convicting him of trafficking in cocaine, possession of cocaine, and possessing criminal tools. On appeal, Bell argues that the trial court erred by entering guilty verdicts that were not supported by sufficient evidence, denying his motion for separate trials, and admitting evidence that was not verified by the proper chain of custody. He also claims that he was denied the effective assistance of counsel. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On September 21, 2011, the Seneca County Grand Jury indicted Bell on the following counts: (1) Count I – trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(b), a felony of the fourth degree; (2) Count II – trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(b), a felony of the fourth degree; (3) Count III - possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a felony of the fifth degree; and (4) Count IV – possessing criminal tools in violation of R.C. 2923.24(A),(C), a felony of the fifth degree. Count I and Count II both included a school specification.

{¶3} Count I related to a controlled buy that occurred on December 23, 2010 in which Bell purportedly sold crack cocaine to a confidential informant. Count II, meanwhile, related to a similar controlled buy that occurred on January

17, 2011. Counts III and IV arose from the February 3, 2011 arrest of Bell in which he was discovered to be in possession of crack cocaine and a digital scale that contained cocaine residue.

{¶4} On August 16, 2012, a mere four days before trial, Bell filed a motion for separate trials. In the motion, Bell requested that there be a separate trial for Count I, a separate trial for Count II, and a separate trial for Counts III and IV. The trial court orally denied the motion on August 20, 2012.

{¶5} The trial of this matter commenced on August 20, 2012 and concluded the next day. The jury returned a guilty verdict on all four counts alleged in the indictment. After a sentencing hearing on August 28, 2012, the trial court sentenced Bell to a total prison term of 43 months.

{¶6} Bell timely appealed from this judgment, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THERE WAS INSUFFICIENT EVIDENCE INTRODUCED AT TRIAL TO SUPPORT THE FINDING THAT THE DEFENDANT WAS GUILTY OF TWO COUNTS OF TRAFFICKING IN COCAINE IN VIOLATION OF OHIO REVISED CODE SECTION 2925.03(A)(1), (C)(4)(B).**

### Assignment of Error No. II

**THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION FOR SEPARATE TRIALS.**

*Assignment of Error No. III*

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

*Assignment of Error No. IV*

**THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO THE ADMISSION OF STATE'S EXHIBIT 7 AS THE STATE OF OHIO FAILED TO ESTABLISH A PROPER CHAIN OF CUSTODY FOR SAID EVIDENCE.**

{¶7} Due to the nature of the assignments of error, we elect to address them out of order.

*Assignment of Error No. I*

{¶8} In his first assignment of error, Bell argues that there was insufficient evidence to support his convictions for trafficking in cocaine as alleged in Counts I and II of the indictment. We disagree.

*Sufficiency Standard*

{¶9} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47. Sufficiency is a test of adequacy, *State v. Thompkins*,

78 Ohio St.3d 380, 386 (1997), and the question of whether evidence is sufficient to sustain a verdict is one of law, *State v. Robinson*, 162 Ohio St. 486 (1955), superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).

### *R.C. 2925.03*

{¶10} Bell was convicted of two counts of violating R.C. 2925.03(A)(1), which provides that "[n]o person shall knowingly * * * sell or offer to sell a controlled substance * * *." The jury also found that the school specification contained in R.C. 2925.03(C)(4)(b) applied to both counts. R.C. 2925.03(C) reads, in pertinent part, as follows:

> (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
>
> * * *
>
> (b) Except as other provided * * *, if the offenses were committed in the vicinity of a school * * *, trafficking in cocaine is a felony of the fourth degree * * *. R.C. 2925.03(C)(4)(b).

### *Count I*

{¶11} As to Count I, the State provided the following evidence, which was sufficient for a rational juror to find that the elements of R.C. 2925.03(A)(1) and (C)(4)(b) were proven beyond a reasonable doubt.

{¶12} Detective Charles Boyer of the Tiffin Police Department testified that he received information that a confidential informant ("CI") could set up a drug transaction with Bell on December 23, 2010. According to Detective Boyer's testimony, after receiving the information and making the necessary arrangements for a controlled buy, the CI reported to a predetermined location. While he was there, Detective Boyer searched him for contraband, pursuant to the department's operational protocol, and found that he had none. The CI was also fitted with audio and video recording devices. Although the buy was originally scheduled to occur at a residence in Tiffin, the CI received a text message from Bell indicating that they should meet at a local convenience store.

{¶13} Detective Boyer said that he observed the CI meet with Bell outside of the convenience store and then walk to the auto dealership next door. He further asserted that he could observe the CI the entire time that he was with Bell. After the two met, the CI walked away from the store and Detective Boyer continued his surveillance. Once the CI was a safe distance from the convenience store, Detective Boyer picked him up and transported him back to the predetermined location for the appropriate post-operation protocol. Detective Boyer testified that throughout the course of the buy, the CI did not come into contact with any person besides Bell.

{¶14} Detective Boyer transported the CI to the predetermined location, where he turned over a package of suspected crack cocaine. The substance was first given to Detective Robert Bour of the Tiffin Police Department, who then handed it over to Detective Boyer. Detective Boyer said that he first entered the substance into the police department's evidence locker before transporting it to the BCI & I lab in Bowling Green so that it could be tested for the presence of controlled substances.

{¶15} Detective Boyer also identified the recordings taken from the audio and video recording devices that were placed on the CI. From the video recording, Detective Boyer captured a still photograph of Bell's face, which was entered into evidence. Also, the jury heard the audio recording in which the CI and Bell are heard discussing drug-related activities.

{¶16} Further, Kelsey Degen, a forensic scientist with the Ohio Bureau of Criminal Identification & Investigation ("BCI & I"), testified that she received the substance involved in the December 23, 2010 controlled buy and tested it for the presence of controlled substances. Her tests led her to conclude that the substance contained 0.2 grams of crack cocaine. Degen's written report of the test results was also entered into evidence.

{¶17} Finally, the State offered the following evidence regarding the proximity of the location of the December 23, 2010 controlled buy to Noble

Elementary School. Thomas Amway, the director of operations for the Tiffin City School District, testified that on December 23, 2010, the district was operating Noble as an educational institution for students. Mark Zimmerman, the Seneca County Engineer, then testified that the location of the controlled buy was within 1,000 feet of Noble Elementary School.

{¶18} In light of the foregoing, we find that the State presented sufficient evidence to support a conviction on Count I.

*Count II*

{¶19} As to Count II, the State provided the following evidence, which was sufficient for a rational juror to find that the elements of R.C. 2925.03(A)(1) and (C)(4)(b) were proven beyond a reasonable doubt.

{¶20} Detective Boyer testified to a similar set of events surrounding the January 17, 2011 controlled buy. He indicated that he found no contraband on the CI's person in the pre-operational search and that he personally applied audio and video recording equipment on the CI. Detective Boyer also stated that the buy was scheduled to occur at an apartment located at 211 South Monroe Street in Tiffin, Ohio. When the CI arrived at the location, Detective Boyer saw him go into the apartment and that during the CI's time in the apartment, he was able to maintain video and audio surveillance. Detective Boyer then observed the CI

leave the apartment and upon picking him up, the CI turned over suspected crack cocaine.

{¶21} As with the December 23, 2010 controlled buy, Detective Boyer also identified the recordings taken from the audio and video recording devices that were placed on the CI. The recordings were played for the jury. Detective Boyer testified that he recognized the CI's and Bell's voices but also acknowledged that there was a third voice that he did not know. He also indicated that the conversation between the CI and Bell suggested that there was a transfer of drugs between the two.

{¶22} Further, Keith Taggart, a forensic scientist with BCI & I, testified that he received the substance involved in the January 17, 2011 controlled buy and tested it for the presence of controlled substances. His tests led him to conclude that the substance contained 0.4 grams of crack cocaine. Taggart's written report of the test results was also entered into evidence.

{¶23} Finally, the State offered the following evidence regarding the proximity of the location of the January 17, 2011 controlled buy to Columbian High School. Amway testified that on January 17, 2011, the Tiffin City School District was operating Columbian as an educational institution for students. Engineer Zimmerman then testified that the location of the controlled buy at 211 South Monroe Street was within 1,000 feet of the high school.

**{¶24}** In light of the foregoing, we find that the State presented sufficient evidence to support a conviction on Count II.

**{¶25}** Accordingly, we overrule Bell's first assignment of error.

*Assignment of Error No. II*

**{¶26}** In his second assignment of error, Bell contends that the trial court erred in denying his motion for separate trials. We disagree.

*Standard of Review*

**{¶27}** We review a trial court's decision to deny or grant a motion to sever for an abuse of discretion. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 49. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 16-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle*, 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Standard for Severance*

**{¶28}** Crim.R. 8(A) authorizes joinder of multiple criminal charges where the charges "are of the same or similar character, or are based on the same act or transaction, or are based on two acts or transactions connected together or

constituting parts of a common scheme or plan, or are part of a course of criminal conduct."  In applying Crim.R. 8(A), we note that "the law favors joinder."  *State v. Waddy*, 63 Ohio St.3d 424, 429 (1992), superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997).  Even if charges are properly joined under Crim.R. 8(A), a defendant may still seek severance of the charges pursuant to Crim.R. 14, which provides as follows: "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires."

{¶29} A motion to sever is considered a pre-trial motion.  Crim.R. 12(C)(5).  Accordingly, such a motion is subject to the time limitation contained in Crim.R. 12(D), which provides that "[a]ll pretrial motions * * * shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier."  However, the rule also provides that the court may extend the time for pretrial motions based on the "interest of justice."  Crim.R. 12(D).  Courts have affirmed denials of motions to sever where the defendant failed to file them in a timely fashion. *E.g.*, *State v. Montgomery*, 2d Dist. No. 22193, 2009-Ohio-1415, ¶ 17 (affirming denial of motion to sever where it was filed outside the time constraints of Crim.R. 12(D)); *State v. Segines*, 8th Dist. No. 89915, 2008-Ohio-2041, ¶ 57 (same); *State v. Tomlinson*, 8th Dist. No. 83411, 2004-Ohio-3295, ¶

14-17 (same); *see also State v. Palmer*, 7th Dist. No. 04-JE-41, 2006-Ohio-749, ¶ 12 (noting that motion to sever was untimely but addressed merits of motion since the trial court did so).

**{¶30}** Here, Bell filed the motion to sever a mere four days before trial, and over eight months after his arraignment. This dilatory action was plainly contrary to the dictates of Crim.R. 12(D). Further, Bell did not state a legitimate reason for the untimely nature of his motion either at trial or in this appeal. As such, we find no abuse of discretion in the trial court's denial of Bell's untimely motion to sever.

**{¶31}** Accordingly, we overrule Bell's second assignment of error.

*Assignment of Error No. IV*

**{¶32}** In his fourth assignment of error, Bell asserts that the trial court erred in admitting the State's exhibit containing the white powder purportedly transferred in the January 17, 2011 controlled buy. Specifically, he argues that the State failed to establish the proper chain of custody for the exhibit. We disagree.

**{¶33}** We review a trial court's admission of evidence as supported by sufficient proof of the chain of custody for an abuse of discretion. *State v. Ward*, 3d Dist. No. 13-10-11, 2011-Ohio-254, ¶ 32.

**{¶34}** The State has the burden of establishing a proper chain of custody for items of evidence that it offers at trial. *Sate v. Brown*, 107 Ohio App.3d 194, 200 (3d Dist. 1995). Carrying this burden implicates Evid.R. 901, which provides that

"[t]he requirement of authentication or identification * * * is satisfied by evidence to support a finding that the matter in question is what its proponent claims." Based on the "low threshold" embodied in Evid.R. 901, *State v. Norman*, 4th Dist. Nos. 08CA3059, 08CA3066, 2009-Ohio-5458, ¶ 68, the State is not required to prove "a strict chain of custody," *State v. Wilkins*, 64 Ohio St.2d 382, 389 (1980). Rather, the State merely needs to "establish that it is reasonably certain that substitution, alteration or tampering did not occur." *Brown* at 200. Accordingly, "any breaks in the chain of custody after establishment of such a reasonable certainty go to the weight of the evidence [and not] its admissibility." *State v. Plotts*, 3d Dist. No. 15-10-08, 2011-Ohio-900, ¶ 26.

{¶35} Here, the State offered significant evidence regarding the chain of custody. Based on a review of the record, the following chain of custody was established. First, the confidential informant turned the suspected crack cocaine over to Detective Bour. Second, Detective Bour gave the substance to Detective Boyer. Third, Detective Boyer entered the substance into evidence. Fourth, Detective Donald Joseph of the Seneca County's Sheriff Office received the substance from evidence and handed it to Captain Brooks. Fifth, Captain Patrick Brooks of the Fostoria Police Department transported the substance to the BCI & I lab in Bowling Green, Ohio. Sixth, Detective Boyer retrieved the substance from the BCI & I lab in Bowling Green. Providing evidence of these transfers was

sufficient for the State to establish a proper chain of custody in support of the substance's admission into evidence.

**{¶36}** The State concedes that it did not offer evidence of how the substance was transferred from the BCI & I lab in Bowling Green to the lab in Richfield, Ohio, where Taggart performed tests on it. Despite this break, there was still sufficient evidence for the jury to find that the substance offered into evidence was authentic, especially since Taggart testified to BCI & I's procedures for cataloguing and tracking samples submitted for testing. As a result, the State's failure to track the transfer of the substance within BCI & I is only relevant to the weight of the evidence and not its admissibility.

**{¶37}** Accordingly, we overrule Bell's fourth assignment of error.

*Assignment of Error No. III*

**{¶38}** In his third assignment of error, Bell claims that he was denied the effective assistance of counsel. In particular, he asserts that his trial counsel was deficient for failing to object to Detective Boyer's and Sergeant Jason Windsor's testimonies regarding the contents of BCI & I reports and to Detective Boyer's authentication of the video recording of the January 17, 2011 controlled buy. We disagree.

*Ineffective Assistance Standard*

**{¶39}** An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *Id.* at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *Waddy*, 63 Ohio St.3d at 433, citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985), superseded by constitutional amendment on other grounds as recognized by *Smith*, 80 Ohio St.3d at 103.

**{¶40}** Further, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone*, 2d Dist. No. 10564 (Dec. 13, 1989). "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" *Id.*, quoting *Smith v. Murray*, 77 U.S. 527, 535, 106 S.Ct. 2661 (1986).

*Testimony Regarding BCI & I Analyses*

**{¶41}** Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 802 generally prohibits the admission of hearsay unless the offered hearsay statement is covered by a specific exception.

**{¶42}** Here, Detective Boyer testified that he received a lab report from BCI & I indicating that the substances involved in the December 23, 2010 and January 17, 2011 controlled buys contained cocaine. Sergeant Windsor similarly testified that he received a lab report from BCI & I stating that the substance and digital scale seized from Bell during his February 3, 2011 arrest contained cocaine. Since both testimonies related to the out-of-court declarations contained in the BCI & I reports, they constituted impermissible hearsay evidence and Bell's trial counsel could have objected.

**{¶43}** Nevertheless counsel's failure to object does not rise to the level of ineffective assistance of counsel. The State called all three of the BCI & I forensic scientists who performed the tests of the substances involved in this matter. Each forensic scientist testified to BCI & I's procedures, their tests, and the lab reports they prepared. As a result, the jurors learned of the lab reports through the testimonies of the forensic scientists, which rendered the impermissible testimonies of Detective Boyer and Sergeant Windsor to be harmless error. *See*

*State v. Austin*, 131 Ohio App.3d 329, 339 (1st Dist. 1998) (finding that police officer's testimony regarding contents of coroner's lab report was impermissible hearsay evidence but that the admission of the testimony was harmless since author of report also testified). Consequently, we cannot find that the failure of Bell's trial counsel to object to Detective Boyer's and Sergeant Windsor's testimonies affected the ultimate outcome of the trial.

*Authentication of January 17, 2011 Recording*

**{¶44}** The failure of Bell's trial counsel to object to Detective Boyer's authentication of the recording of the January 17, 2011 controlled buy again implicates Evid.R. 901. In assessing Detective Boyer's authentication, we are mindful that it is immaterial whether the actual videographer testifies to the authenticity of the video. *See State Farm Mut. Auto. Ins. Co. v. Anders*, 197 Ohio App.3d 22, 2012-Ohio-824, ¶ 30 (10th Dist.) ("It is unnecessary to show who took the photograph or when it was taken * * *."); *Solomon v. Mota*, 49 N.E.2d 703, 705 (2d Dist. 1942) ("We have no difficulty in determining that it is not necessary for photographs and exhibits to be identified by the person taking same in order to make them admissible in evidence * * *."). Instead, the proponent of the evidence merely needs to offer "testimony that the [video] is a fair and accurate representation of what it represents." *State Farm* at ¶ 30.

{¶45} Detective Boyer's testimony satisfies the "low threshold" of authentication. *Norman*, 2009-Ohio-5458, at ¶ 68. He indicated that he personally placed the video and audio recording device on the confidential informant. Detective Boyer also said that he removed the device once the controlled buy operation was complete and downloaded its contents into the evidence database. Further, while Detective Boyer was not in the room at the time that the recording was made, he was overseeing the operation and was able to listen to the recording in real time.

{¶46} Since Detective Boyer properly authenticated the recording, Bell's trial counsel had no grounds to make an objection. As a result, the failure of trial counsel to make an objection cannot constitute ineffective assistance of counsel.

{¶47} Accordingly, we overrule Bell's third assignment of error.

{¶48} Having found no error prejudicial to Bell, in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**