[Cite as *State v. Bradshaw*, 2023-Ohio-1244.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 8-22-09

    v.

DENNIS J. BRADSHAW, JR.,          O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 21 04 0085

**Judgment Affirmed**

**Date of Decision: April 17, 2023**

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Stacia L. Rapp and Erin Rosen* **for Appellee**

**MILLER, P.J.**

{¶1} Defendant-appellant, Dennis J. Bradshaw, Jr., appeals the January 25, 2022 judgment and sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from the allegations of multiple female minors claiming Bradshaw inappropriately touched them. On April 13, 2021, the Logan County Grand Jury indicted Bradshaw on seven counts, involving two alleged victims: Count One of gross sexual imposition in violation of R.C. 2907.05(A)(4), (C)(2), a third-degree felony; Counts Two, Three, and Seven of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1), fourth-degree felonies; Counts Four and Five of rape in violation of R.C. 2907.02(A)(2), (B), first-degree felonies; and Count Six of attempted rape in violation of R.C. 2923.02(A)(2), (B), a second-degree felony. Count One related to victim J.B., Bradshaw's stepdaughter, and the remaining counts related to victim A.S., Bradshaw's niece.

{¶3} On May 11, 2021, the Logan County Grand Jury issued a superseding indictment which included Counts One through Seven as previously charged and added two additional counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), (C)(2), third-degree felonies, as Counts Eight and Nine respectively. Both additional counts related to a third alleged victim, K.A., who, along with her parents, were friends of the Bradshaw family.

**{¶4}** Bradshaw appeared for arraignment on the superseding indictment on June 1, 2021 and entered a not guilty plea to the counts in the superseding indictment. On July 13, 2021, a second superseding indictment was filed which added a repeat-violent-offender specification pursuant to R.C. 2941.149(A) to Counts Four, Five, and Six.

**{¶5}** On October 26, 2021, Bradshaw filed a motion for leave to file a motion to sever. On November 9, 2021, the trial court granted the requested leave and Bradshaw's motion to sever the charges pertaining to the three victims into three separate trials was filed. The State opposed Bradshaw's motion to sever. In a December 6, 2021 judgment entry, the trial court denied Bradshaw's motion to sever.

**{¶6}** A jury trial was held on December 15-17, 2021. On December 17, 2021, the jury returned its verdict finding Bradshaw guilty of Counts One, Two, Three, Four, Five, Six, and Seven. With respect to Counts Eight and Nine, the jury found Bradshaw not guilty. The trial court accepted the jury's verdict and entered findings of guilty as to Counts One through Seven. Pursuant to the parties' stipulation, the trial court found Bradshaw guilty of being a repeat violent offender pursuant to the specification accompanying Counts Four, Five, and Six of the second superseding indictment. The judgment entry of conviction was filed on December 27, 2021.

**{¶7}** A sentencing hearing was held on January 21, 2022. The trial court determined that Counts Six and Seven merged for sentencing, and the State elected to have Bradshaw sentenced on Count Six. Then, the trial court sentenced Bradshaw to 5 years in prison on Count One, 18 months in prison on Count Two, 18 months in prison on Count Three, an indefinite term of 11 to 16.5 years in prison on Count Four, 11 years in prison on Count Five, and 8 years in prison on Count Six. The trial court filed its sentencing entry on January 25, 2022.

**{¶8}** Bradshaw filed a notice of appeal on February 17, 2022. He raises six assignments of error for our review. For ease of review, we will discuss his first and second assignments of error together.

### Assignment of Error No. I

**Appellant's Due Process right to a fair trial under the state and federal constitutions was violated by the trial court's denial of a motion to sever the allegations by the three separate girls into separate trials.**

### Assignment of Error No. II

**Appellant's Due Process right to a fair trial under the state and federal constitutions was violated by the admission of extensive other acts evidence in violation of Evid.R. 404.**

**{¶9}** In his first assignment of error, Bradshaw argues that he was denied the right to a fair trial by the trial court's denial of his motion to sever the allegations of the three victims into three separate trials. Bradshaw alleges he was prejudiced by the joinder of these offenses for trial due to the "prejudice inherent in combining

allegations from three different victims," specifically, the likelihood of improper character inferences and improper "bolstering" of the different victims. (Appellant's Brief at 11-17). In his second assignment of error, Bradshaw contends that the trial court erred by admitting extensive other-acts evidence in violation of Evid.R. 404. We first address Bradshaw's argument that the trial court erred by combining the allegations of the three victims for the purpose of trial.

{¶10} "Issues of joinder and severance are generally reviewed under an abuse of discretion standard." *State v. Plott*, 3d Dist. Seneca Nos. 13-15-39 and 13-15-40, 2017-Ohio-38, ¶ 52, citing *State v. Shook*, 3d Dist. Logan No. 8-14-01, 2014-Ohio-3987, ¶ 22 and *State v. Bell*, 3d Dist. Seneca No. 13-12-39, 2013-Ohio-1299, ¶ 27. An abuse of discretion implies the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶11} "In general, the law favors joining multiple offenses in a single trial if the offenses charged 'are of the same or similar character.'" *State v. Valentine*, 5th Dist. Fairfield No. 18 CA 27, 2019-Ohio-2243, ¶ 43, quoting *State v. Lott*, 51 Ohio St.3d 160, 163 (1990), citing *State v. Torres*, 66 Ohio St.2d 340 (1981). "[T]wo or more offenses may be charged in the same indictment if 'they are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common

scheme or plan, or are part of a course of criminal conduct.'" *Id.*, quoting Crim.R. 8(A).

**{¶12}** "To prevail on a motion to sever, a defendant has the burden of demonstrating that '(1) his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.'" *Plott* at ¶ 55, quoting *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992). "A defendant's claim of prejudice is negated when: (1) evidence of the other crimes would have been admissible as 'other acts' evidence under Evid.R. 404(B) or (2) the evidence of each crime joined at trial is simple and direct." *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 22, citing *Lott* at 163, *Schaim* at 59, and *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). Importantly, the two tests are disjunctive—the satisfaction of one negates an accused's claim of prejudice without consideration of the other. *State v. Truss*, 10th Dist. Franklin No. 18AP-147, 2019-Ohio-3579, ¶ 17. Thus, "[i]f the state can meet the joinder test, it need not meet the stricter 'other acts' test." *State v. Johnson*, 88 Ohio St.3d 95, 109 (2000).

**{¶13}** Generally, "[e]vidence meets the simple-and-direct standard [of the joinder test] if it is straightforward and uncomplicated enough that the jury can

segregate the proof required for each offense." *State v. Parham*, 10th Dist. Franklin No. 16AP-826, 2019-Ohio-358, ¶ 27, citing *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 52. "Evidence is 'simple and direct' if (1) the jury is capable of readily separating the proof required for each offense, (2) the evidence is unlikely to confuse jurors, (3) the evidence is straightforward, and (4) there is little danger that the jury would 'improperly consider the testimony on one offense as corroborative of the other.'" (Citations omitted.) *Valentine* at ¶ 48, quoting *State v. Wright*, 4th Dist. Jackson No. 16CA3, 2017-Ohio-8702, ¶ 52. "Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof." *State v. Lewis*, 6th Dist. Lucas Nos. L-09-1224 and L-09-1225, 2010-Ohio-4202, ¶ 33. "Courts have held that evidence of multiple offenses is 'simple and direct' where, for example, the offenses involved different victims, different incidents or factual scenarios, and different witnesses." *Valentine* at ¶ 49, citing *State v. Dantzler*, 10th Dist. Franklin Nos. 14AP-907 and 14AP-908, 2015-Ohio-3641, ¶ 23 (holding that joinder did not prejudice the defendant because "[t]he evidence relating to each incident was simple and direct: the incidents occurred separately, involved different victims, and different eyewitnesses independently identified defendant as the shooter at each incident").

{¶14} Here, J.B. and A.S. are cousins who were allegedly assaulted by Bradshaw at his home during roughly the same time period. J.B. is Bradshaw's stepdaughter and A.S. is Bradshaw's niece. K.A. is a former family friend who was allegedly abused at Bradshaw's residence.[1] Thus, insofar as the State sought to provide background information and contextualize Bradshaw's abuse, there was some necessary evidentiary overlap. Nevertheless, J.B. was the only witness to the crime allegedly perpetrated against her by Bradshaw. Likewise, A.S. was the only witness to the crime allegedly perpetrated against her. When J.B. testified about what Bradshaw had allegedly done to her and the State introduced her other statements, including a recording of her forensic interview at the Child Advocacy Center ("CAC") at Nationwide Children's Hospital where she detailed Bradshaw's actions underlying the indictment, there was no risk that the jury would misunderstand J.B.'s account and conclude that she was describing anything other than the acts Bradshaw perpetrated against her. The same is true of A.S.'s testimony and related evidence. Therefore, the evidence was sufficiently straightforward and uncomplicated that the jury could readily segregate the proof required for each offense. *State v. York*, 3d Dist. Union No. 14-21-14, 2022-Ohio-1626, ¶ 33. In fact, during its opening statement, the State informed the jury of its intention to present each of the victims as a "chapter" in the trial: "Because we have three

---

[1] The jury found Bradshaw not guilty of each of the counts relating to K.A. Accordingly, the majority of our analysis will focus on Counts One through Seven.

chapters, the State's intention is to divide this up and put the child and witnesses related to that child all together then move on to the second chapter and then move on to the third chapter." (Dec. 15-17, 2021 Tr. at 68-71). In its closing statement, the State turned again to its "chapter" analogy and urged the jurors to consider each of the victims and their related witnesses as distinct "chapters." (*Id.* at 573). In fact in Bradshaw's appellate brief, he concedes the trial victims' allegations were so distinct that they effectively resulted in three separate "mini-trials" and he notes the "extreme distinctions in the trial evidence relating to the different victims." (Appellant's Brief at 16).

{¶15} Indeed, in sexual-assault cases with similar allegations to those in this case, courts have determined that the evidence was separate and distinct. *See State v. Addison*, 12th Dist. Clermont Nos. CA2019-07-058 and CA2019-07-059, 2020-Ohio-3500, ¶ 53; *State v. Woodruff*, 1st Dist. Hamilton Nos. C-140256 and C-140257, 2015-Ohio-2422, ¶ 15. Furthermore, the jury's verdict acquitting Bradshaw of Counts Eight and Nine, both relating to K.A., support a finding that the jury was able to segregate the proof required with respect to each offense and each victim. *See Shook*, 2014-Ohio-3987, at ¶ 28 (holding that "[t]he result of the trial seems to suggest that the testimony was simple and direct as the jury acquitted Shook on one of the counts"). For all these reasons, we conclude the trial court did not abuse its discretion by allowing the charges to be tried together.

{¶16} Bradshaw's first assignment of error is overruled.

{¶17} We next turn to Bradshaw's second assignment of error in which he argues that he was prejudiced by the admission of extensive "other acts" evidence.

{¶18} "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). "'However, there are exceptions to the general rule: "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000). "If one offense could be introduced under Evid.R. 404(B) at the trial of the other offenses, had the offenses been tried separately, 'any "prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials," and a court need not inquire further.'"

*Valentine*, 2019-Ohio-2243, at ¶ 46, quoting *Schaim*, 65 Ohio St.3d at 59, quoting *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964).

{¶19} "In *State v. Williams*, the Supreme Court of Ohio set forth the three-step analysis trial courts should conduct in determining whether 'other acts' evidence is admissible under Evid.R. 404(B)." *State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 22, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19-20. "'The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.*, quoting *Williams* at ¶ 20, citing Evid.R. 401. "'The next step is to consider whether evidence of the other crimes, wrongs or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).'" *Id.*, quoting *Williams* at ¶ 20. "'The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.'" *Id.*, quoting *Williams* at ¶ 20, citing Evid.R. 403.

{¶20} "Generally, '[a] trial court is given broad discretion in admitting and excluding evidence, including "other bad acts" evidence.'" *Id.* at ¶ 23, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2013-Ohio-2314, ¶ 7, citing *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). "Thus, a reviewing court will not reverse

a trial court's evidentiary ruling absent an abuse of discretion that materially prejudices the affected party." *State v. Glenn-Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 24, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).

{¶21} However, we note that, at trial, Bradshaw did not object to the "other acts" evidence which he now assigns error, nor did he request the trial court to issue a limiting instruction with respect to the "other acts" evidence. Accordingly, we review the admission of the other acts evidence for plain error. *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 23. We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise. *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, ¶ 35-36. *See also State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, ¶ 90 ("McAlpin could not establish plain error, because he cannot show a reasonable probability that but for standby counsel's actions, the jury would have acquitted him.").

**{¶22}** Here, the "other acts" evidence to which Bradshaw assigns error is the testimony regarding the sexual abuse allegations raised by the other victims. Bradshaw alleges that the prejudice inherent in the jury hearing testimony relating to the alleged sexual abuse of the other victims is so great that "[n]o jury could avoid the obvious character implications in [the] allegations." (Appellant's Brief at 15).

**{¶23}** To the extent Bradshaw argues that evidence of prior sexual abuse of minors is so inherently inflammatory that it can never be properly used as "other acts" evidence, his argument is unavailing. *See e.g., State v. Williams*, 2012-Ohio-5695, ¶ 25 ("Evidence that Williams had targeted teenage males who had no father figure to gain their trust and confidence and groom them for sexual activity with the intent of sexual gratification may be admitted to show the plan of the accused and the intent for sexual gratification.").

**{¶24}** Additionally, Bradshaw's trial counsel not only did not object to the purported other-acts evidence, but in fact, used the other acts evidence as part of his defense strategy. A.S. and J.B., who are cousins, testified to the close nature of their relationship. (Dec. 15-17, 2021 Tr. at 248-249, 467). A.S., who is approximately three years older than J.B., described their relationship as more akin to sisters than cousins. (*Id.* at 150-151, 248). According to A.S., when J.B. disclosed that she had been sexually abused by Bradshaw, the family did not believe her. (*Id.* at 252). A.S. testified that she believed the veracity of J.B.'s accusations against Bradshaw

because the abuse that J.B. described, including the abuse happening at Bradshaw's home and starting while she was asleep, was similar to her own experiences with Bradshaw. (*Id.*). According to A.S., the similarities in their experiences and A.S.'s desire to protect her younger cousin compelled her to disclose her own encounters with Bradshaw. (State's Ex. 1). At trial, A.S. stated that she underwent a forensic interview to give J.B. "a chance to tell her story." (Dec. 15-17, 2021 Tr. at 264). She also stated, "Honestly, I could care less about what happened to me, but when it comes to [J.B.] or another one that's way littler than her [K.A.], then, yeah, I think [Bradshaw's actions are] kind of foul." (*Id.* at 264-265).

{¶25} Bradshaw's trial counsel used A.S.'s statements relating to her desire to use her own experiences to "bolster" J.B.'s and, to a lesser extent, K.A.'s experiences, in an attempt to undermine the victims' credibility. Specifically, Bradshaw's trial counsel argued that A.S. fabricated her claims of sexual abuse in an effort to coax the girls' family into believing J.B.'s claims.

{¶26} Additionally, in some circumstances, Bradshaw's trial counsel tested the girls' credibility by attempting to elicit additional details regarding "other acts" evidence during cross-examination. For instance, during J.B.'s testimony, the State played a recording of J.B.'s interview with a forensic examiner at Nationwide Children's Hospital. In that interview, J.B. detailed the alleged sexual abuse which forms the factual basis for Count One, the sole count relating to J.B. (State's Ex.

7). When asked by the forensic examiner if the experience she described was the only time that Bradshaw touched her inappropriately, J.B. stated that it was. (*Id.*). However, during cross examination, J.B. conceded that she lied to the forensic examiner and alleged that Bradshaw inappropriately touched her on other occasions, as well. (Dec. 15-17, 2021 Tr. at 488). Bradshaw's trial counsel then asked J.B. to provide specific details of the alleged additional instances of sexual abuse she summarily referenced. (*Id.* at 488-493). Bradshaw's trial counsel then used these additional alleged instances of sexual abuse to undermine J.B.'s credibility. *See State v. C.D.S.*, 10th Dist. Franklin No. 20AP-355, 2021-Ohio-4492, ¶ 46. Accordingly, to the extent the trial court erred by allowing the other-acts evidence, Bradshaw's counsel utilized the error as part of the defense strategy, effectively making it invited error.

{¶27} Furthermore, Bradshaw's contention that he was prejudiced by the admission of the other acts evidence is undermined by the jury's acquittal of Counts Eight and Nine, both relating to K.A. In an attempt to attenuate the implications of the jury's acquittal on Counts Eight and Nine, Bradshaw argues that "K.A.'s claims were simply not viable" once she admitted that "she did not open her eyes to see who was touching her." (Appellant's Brief at 12). Indeed, during her testimony, K.A. did state that she did not open her eyes to see who was touching her vaginal

area; however, K.A. did testify to other circumstantial evidence indicating that Bradshaw was the perpetrator.

{¶28} Moreover, Bradshaw argues that the State had "no legitimate basis for admitting the other incidents as other acts." (Appellant's Brief at 13). Specifically, Bradshaw argues that the other acts were not relevant to demonstrate identity based on similarities in the conduct. In support of his position, Bradshaw relies heavily on *State v. Hartman*, where the Supreme Court of Ohio stated, "There is nothing fingerprint-like about molesting a child in a bed during the night. * * * That both crimes were committed against a female sleeping in a bed is hardly unique to Hartman as a perpetrator." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 38. However, the facts in *Hartman* are distinct from those in the instant case. In *Hartman*, the defendant was on trial for allegedly forcing his penis into the mouth of a sleeping adult female without consent. *Id.* at ¶ 2-11. At trial, Hartman's former stepdaughter testified that 4 years earlier, when she was 12 years old, Hartman began entering her room and touching her breasts, vagina, and in one instance, forced her to touch his penis with her hand. *Id.* at ¶ 15. Furthermore, Hartman admitted to the sexual contact with the victim, but alleged that it was consensual. *Id.* at ¶ 39. The Supreme Court of Ohio found that the testimony of Hartman's former stepdaughter was not admissible for any proper purpose under Evid.R. 404(B) because the rationales relied upon by the trial court either "invited an

improper character inference or was irrelevant to a material issue in the case." *Id.* at ¶ 73.

{¶29} However, here, the victims were all minor females who were sleeping in Bradshaw's home at the time of the alleged sexual abuse. They were all close family members or friends. Additionally, each of the victims testified that the abuse began with Bradshaw touching their vaginal area with his fingers. The similarities in J.B. and A.S.'s experiences were such that A.S. testified that when J.B. described Bradshaw's actions, A.S. believed her because the behavior J.B. described was so similar to her own experiences. Additionally, Bradshaw made identity an issue by suggesting that other individuals, most notably, his wife's brother, Curtis Breneman, who lived in Bradshaw's home on multiple occasions during the relevant timeframe, would have had access to the girls.

{¶30} Moreover, the other acts evidence could be admitted to show lack of mistake. Detective Blake Kenner of the City of Bellefontaine Police Department testified that Bradshaw told him that perhaps he play wrestled with A.S. and that she misconstrued those actions as inappropriate touching. (Dec. 15-17, 2021 Tr. at 331). Bradshaw also told Detective Kenner that A.S. was "infatuated" with him. (*Id.* at 331-332). Furthermore, A.S.'s father testified that Bradshaw admitted to having sexual contact with A.S., but alleged that it was consensual. (*Id.* at 312-

313). Accordingly, the other acts evidence could have been used to demonstrate a lack of mistake.

**{¶31}** For all these reasons, we find that the trial court did not err by admitting the "other acts" evidence.

**{¶32}** Bradshaw's second assignment of error is overruled.

### Assignment of Error No. III

**Appellant's state and federal rights to the effective assistance of counsel were violated by counsel's failure to request a limiting instruction preventing the jury from drawing an improper character inference from other alleged acts of molestation.**

**{¶33}** In his third assignment of error, Bradshaw argues that he received ineffective assistance of counsel. Bradshaw asserts his trial counsel was ineffective for failing to request a limiting instruction. According to Bradshaw, his trial counsel's failure to request a limiting instruction resulted in the jury making impermissible character or propensity inferences from the other acts, thereby prejudicing him.

**{¶34}** "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d

303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶35} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

{¶36} Bradshaw alleges that his trial counsel was ineffective for failing to request a limiting instruction warning the jury not to draw an improper character or propensity inference from the other acts evidence pertaining to the other victims.

**{¶37}** With respect to the first prong of the *Strickland* test, Bradshaw argues that, due to the jury's exposure to "extensive testimony" concerning Bradshaw's actions relating to other victims, "a limiting instruction was Bradshaw's only protection against the jury drawing an improper character or propensity inference." (Appellant's Brief at 18). Thus, Bradshaw contends that, under the circumstances, his trial counsel's failure to request a limiting instruction was not reasonable.

**{¶38}** Courts have recognized that "the failure to seek a limiting instruction does not in and of itself indicate ineffective assistance of counsel." *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912, ¶ 26, citing *State v. Cox*, 12th Dist. Butler No. CA2005-12-513, 2006-Ohio-6075, ¶ 30. "[N]ot request[ing] a limiting instruction is sometimes a tactical [decision], and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested." *State v. Schaim*, 65 Ohio St.3d 51, 61, fn.9 (1992).

**{¶39}** As courts have recognized, trial counsel may decide, as a matter of trial strategy, not to request a limiting instruction due to concerns that the limiting instruction "will only emphasize in the juror's minds the evidence of other criminal acts committed by the defendant, thereby reinforcing the prejudice." *Strongsville v. Sperk*, 8th Dist. Cuyahoga No. 91799, 2009-Ohio-1615, ¶ 38. *See State v. Hester*, 10th Dist. Franklin No. 02AP-401, 2002-Ohio-6966, ¶ 15 ("Counsel may have declined to request a limiting instruction regarding appellant's prior convictions out

of concern that, if such an instruction were given, the prior convictions would be once again called to the jury's attention."). Bradshaw's trial counsel employed this same logic by stipulating to Bradshaw's prior aggravated robbery and kidnapping convictions on the condition that the court, rather than the jury, would decide whether Bradshaw is a repeat violent offender in the event that he was found guilty of Count Five or Count Six. (Doc. No. 184).

{¶40} We conclude that Bradshaw has not rebutted the presumption that his trial counsel provided him with adequate representation, despite his decision not to request a limiting instruction. Here, choosing not to request a limiting instruction may have been a matter of trial strategy. A competent attorney could have viewed such an instruction as overly emphasizing the various ways that the jury could properly rely on the other acts evidence: such as to show a pattern, prove identity, and demonstrate lack of mistake. *See State v. Kinney*, 4th Dist. Ross No. 07CA2996, 2008-Ohio-4612, ¶ 20 ("Kinney's attorney may have reasonably preferred not to have the trial judge highlight [the] prior uses of his prior convictions, and he could reasonably conclude that the limiting instruction would do more harm than good."); *State v. Dickinson*, 3d Dist. Paulding No. 11-08-08, 2009-Ohio-2099, ¶ 22.

{¶41} Trial counsel's strategy at trial was to undermine the cumulative credibility of the victims. Counsel attempted to convince the jury that the victims, specifically J.B. and A.S., were confidants who shared a close family relationship

and argued that A.S. only testified to bolster the credibility of J.B.'s testimony and allegations. Accordingly, the decision not to request a limiting instruction was consistent with counsel's trial strategy. *State v. Thacker*, 4th Dist. Lawrence No. 04CA18, 2005-Ohio-1227, ¶ 29.

**{¶42}** Moreover, Bradshaw has failed to demonstrate how he was prejudiced by the alleged error. Bradshaw contends that due to the pervasive nature of the other acts testimony, "there was nothing to prevent the jury from drawing an improper character or propensity inference[] from the multiple allegations" which was "entirely natural" under the circumstances. (Appellant's Brief at 17-19). Bradshaw even alleged that "[a] limiting instruction was the only thing that would have prevented the jury from reaching the conclusion" that if he sexually abused one of the girls, he sexually abused the others. (*Id.* at 19). However, the jury's verdict belies Bradshaw's claims. Here, the jury found the defendant not guilty of all counts relating to one of the three victims. Accordingly, Bradshaw's argument that the jury was not capable of separating the other acts evidence without a limiting instruction is severely undermined. *State v. Gardner*, 2nd Dist. Montgomery No. 21357, 2010-Ohio-6479, ¶ 33 ("The fact that Gardner was not convicted of felonious assault and burglary indicates that the jury did not convict him of aggravated burglary simply because his possession of marijuana shows a propensity to commit crime. Given

the evidence discussed above, we conclude that it is unlikely that the lack of a limiting instruction caused the jury to convict Gardner of aggravated burglary.").

{¶43} Additionally, the State produced ample evidence of the counts of which the jury found Bradshaw guilty, even without the other acts evidence. Importantly, J.B. and A.S. provided direct testimony of Bradshaw's actions, independent of each other's testimony. Accordingly, we do not find the failure to request a limiting instruction affected the outcome of trial. *State v. Fisher*, 8th Dist. Cuyahoga No. 83098, 2004-Ohio-3123, ¶ 32-33; *State v. Tunstall*, 12th Dist. Butler No. CA2019-06-090, 2020-Ohio-5124, ¶ 68-70.

{¶44} Bradshaw's third assignment of error is overruled.

**Assignment of Error No. IV**

**Appellant's Due Process rights under the state and federal constitutions were violated by a conviction for rape that was based on insufficient evidence.**

**Assignment of Error No. V**

**The second conviction for rape was against the weight of the evidence.**

{¶45} In his fourth and fifth assignments of error, Bradshaw argues that his convictions for rape are not supported by sufficient evidence and are against the manifest weight of the evidence.

*Standards for Sufficiency-of-the-Evidence and Manifest Weight Review*

**{¶46}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.

**{¶47}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶48}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing

court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

*Bradshaw's Offenses*

{¶49} Bradshaw was found guilty of two counts of rape in violation of R.C. 2907.02(A)(2), (B). The offense of rape is codified at R.C. 2907.02, which provides in relevant part that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).

{¶50} "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A).

{¶51} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus.

"Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit 'by force or threat of force' depends upon the victim and offender's relationship." *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 41. "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56 (1988), paragraph one of the syllabus. Where the victim is a child and the offender is a person in a position of authority over the child, such as a parent or stepparent, "the same degree of force and violence may not be required * * * as would be required were the parties more nearly equal in age, size, and strength." *Id.*; *State v. Dye*, 82 Ohio St.3d 323 (1998), syllabus. Moreover, the force applied against the child "'need not be overt and physically brutal, but can be subtle and psychological.'" *Eskridge* at 58, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154 (8th Dist.1985). "'As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *Id.* at 59, quoting *Fowler* at 154.

**{¶52}** "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. "A conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio

St.3d 118, 124 (1991). "[I]n some instances, certain facts can only be established by circumstantial evidence" and a conviction based thereon "is no less sound than one based on direct evidence." *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 80. "If the state 'relies on circumstantial evidence to prove an [essential] element of the offense charged, there is no [requirement that the evidence must be] irreconcilable with any reasonable theory of innocence in order to support a conviction[,]' so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt." *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 50, quoting *Jenks* at paragraph one of the syllabus.

*Analysis*

{¶53} Bradshaw alleges that his second conviction for rape was not based on sufficient evidence. Specifically, Bradshaw alleges that the testimony at trial only establishes one instance of rape, rather than two.

{¶54} At trial, A.S. testified that she was born in 2003 and that her mother is the sister of Tanya Bradshaw ("Tanya"). (Dec. 15-17, 2021 Tr. at 124-126). Tanya is married to Bradshaw, making Bradshaw A.S.'s uncle. (*Id.* at 126). A.S. and J.B. are cousins. (*Id.*).

{¶55} The State introduced State's Exhibit 1, which is a video of the July 28, 2020 forensic interview of A.S. conducted at the Children's Advocacy Center at Nationwide Children's Hospital. (*Id.* at 128); (State's Ex. 1). In the interview, A.S.

began by stating that the reason she agreed to give the forensic interview was to support her cousin, J.B. (State's Ex. 1). A.S. stated that she decided to share her experiences in the hope that others, including her family, would believe J.B.'s account of her own experiences. (*Id.*).

{¶56} Then, A.S. told the interviewer that Bradshaw "touched" her and that it happened "a lot." (*Id.*). Then, A.S. was asked by the interviewer to describe the very last instance that Bradshaw touched her. (*Id.*). A.S. stated that it occurred at Bradshaw's home in Bellefontaine, she then stated, "I want to say – I think it was in the living room. * * * I know it happened once in the living room and once in Keegan's room, but I can't remember which one was the last time. I think it was in the living room." (*Id.*).

{¶57} When describing the last encounter, A.S. stated that Bradshaw started "touching and rubbing" her vaginal area. (*Id.*). She also said that Bradshaw tried to move her hand to his penis, but that she would stiffen her body so that Bradshaw was unable to move her arm. (*Id.*). A.S. stated that Bradshaw pulled down her pants and started touching her vagina and butt. (*Id.*). She said that while he was touching her, "he acted like he liked it." (*Id.*). A.S. clarified that he touched the "outside and inside" of her vagina with his finger and "kept rubbing [her]." (*Id.*). A.S. described his finger as "moving fast" and hurting her. (*Id.*). She described the feeling as something "stabbing" her inside her vagina. (*Id.*). A.S. recalled that "every time"

that Bradshaw touched her, she would cry. (*Id.*). A.S. stated that while he was touching her, he tried to "sweet talk" her. (*Id.*). She stated, "[H]e always told me he was never going to hurt me but I didn't understand it because it was always hurting me." (*Id.*). A.S. also described in detail a number of other instances in which Bradshaw touched her vaginal area, tried to force her to touch his penis, and tried to have sex with her. (*Id.*).

**{¶58}** After State's Exhibit 1 was played for the jury, A.S. stated that everything she told the forensic examiner during the interview was true. (Dec. 15-17, 2021 Tr. at 195). She specified that all of the events she described occurred when she was 14 to 16 years old. (*Id.* at 208).

**{¶59}** A.S. recalled a June 2, 2021 telephone call when A.S., Bradshaw, Tanya, and A.S.'s boyfriend spoke on the phone while Bradshaw was in jail on the instant offenses. (*Id.* at 211). The State introduced a recording of the telephone conversation as State's Exhibit 3, and the recorded conversation was played for the jury. (*Id.*); (State's Ex. 3). In State's Exhibit 3, Bradshaw tells A.S. that he loves her and asks her to "get ahold of my lawyer and talk to her." (State's Ex. 3). Bradshaw also tells A.S.'s boyfriend that he "needs to make [his] old lady * * * do what [Bradshaw] told her to do." (*Id.*). A.S. testified that she understood Bradshaw to be asking her to talk to his lawyer and refuse to cooperate with the prosecution.

(Dec. 15-17, 2021 Tr. at 216-217). A.S. stated that she never complied with Bradshaw's request to talk to his lawyer. (*Id.* at 218).

**{¶60}** On cross-examination, A.S. admitted that she continued to have contact with Bradshaw, even after the alleged sexual abuse began. (*Id.* at 227-228). A.S. stated that although she was "kind of" fearful of Bradshaw, he was a member of her family and she "had" to be around him sometimes if she wanted to see her Aunt Tanya or her cousin Keegan (Bradshaw's son) again. (*Id.* at 227-229).

**{¶61}** On cross-examination, Bradshaw's defense counsel methodically reviewed the facts underlying each of the counts with A.S. (*Id.* at 253-258). With respect to Count Five, A.S. stated that she did not want to give more information because she already talked about it to the forensic examiner as seen in State's Exhibit 1. (*Id.* at 256). However, she did give Bradshaw's trial counsel some additional details, such as the incident happening at night while everyone was sleeping, and that Bradshaw, Tanya, and their young son were the people living at the home at the time. (*Id.*). She stated the incident happened in Keegan's bedroom, and that although he was in the room, she was not sure where her cousin was sleeping. (*Id.* at 257-258). A.S. stated she could not specifically recall what she or Bradshaw were wearing when the incident occurred. (*Id.* at 257).

**{¶62}** With respect to Count Six, A.S. stated that it also occurred in "The Villa," which was the home that Bradshaw, Keegan and Tanya were living in at the

time. (*Id.* at 258). She stated that she could not identify the length of the gap in time between this encounter and the previous encounter. (*Id.* at 258-259). However, she specified that it happened in approximately 2019. (*Id.* at 259). She stated she did not want to provide more information or "revisit what happened." (*Id.*).

**{¶63}** On redirect examination, A.S. stated there were "probably more" incidents of Bradshaw touching her than had been indicted. (Dec. 15-17, 2021 Tr. at 261-262). A.S. stated it was "difficult" for her to talk about the details of the abuse in open court. (*Id.* at 262). A.S. stated her cousin, J.B., is her "world" and that she loves Bradshaw's wife, Tanya, and Bradshaw and Tanya's son, Keegan. (*Id.* at 262-263). A.S. admitted she knew disclosing the sexual abuse was going to disrupt her relationship with Tanya and Keegan, but she reported the abuse anyway because "something needed to be done." (*Id.* at 263). On recross examination, A.S. said "Honestly, I could care less about what happened to me, but when it comes to [J.B.] or another little one that's way littler than her [K.A.], then, yeah, I think that's kind of foul." (*Id.* at 264-265).

**{¶64}** Celeste Prince, the forensic interviewer who conducted A.S.'s interview at Nationwide Children's Hospital testified that she was part of A.S.'s three-person care team. (*Id.* at 286-287, 290-291). Prince described a forensic interview as "a process where a child is able to provide any information regarding abuse or neglect that might have happened to them from a trauma informed and

developmental[ly] appropriate manner." (*Id.* at 290). The purpose of a forensic interview is for medical diagnosis and treatment. (*Id.* at 291). Prince testified that through her training and experience, she has become aware of certain "blocks" to a child's disclosure of sexual abuse, such as lack of support of family, fear of retaliation, and the child's age and understanding. (*Id.* at 293). According to Prince, it is common for children to delay disclosure of sexual abuse for a variety of reasons, such as fear that they will not be believed, proximity to the perpetrator, fear of retaliation, or a negative response to a tentative disclosure. (*Id.* at 293-294). Prince also stated she has observed situations were children recant their accusations due to disbelief from others or fear of what may happen next. (*Id.* at 294).

{¶65} Prince stated that, through her training and experience, she has observed situations where a child discloses sexual abuse not to protect themselves but to protect a younger child. (*Id.*). According to Prince, sometimes when a child is not prepared to disclose the abuse for themselves, but they are aware of or concerned about others being abused, the child may "push their own comfort boundaries in order to try to protect others" by making a disclosure sooner than they are ready to. (*Id.* at 294-295). Prince also stated that she has observed situations where sexual offenders choose child victims who are within their circle of friends or relatives. (*Id.* at 295). According to Prince, offenders may choose these victims due to more opportunity and access to the child but also because they have a better

opportunity to groom the victim and prevent the child from disclosing the abuse. (*Id.*). Prince has also observed situations where sexual offenders chooses victims who have a "constellation of other issues going on in their lives" because it can increase the victim's vulnerability and aid in the grooming process if the victim views the perpetrator as a comfort. (*Id.* at 296). Moreover, due to the victim's past experience with abuse and neglect, an offender may think the child will not be believed by others in the event they disclose the abuse. (*Id.*).

{¶66} On cross-examination, Prince admitted that "[i]t is possible" for children to lie. (Dec. 15-17, 2021 Tr. at 297). Furthermore, Prince's job is not to determine the veracity of the child's disclosure, her job is to gather the facts. (*Id.* at 297-298). Prince stated that A.S.'s interview was "more detailed than the average disclosure" but stated that the details provided in a disclosure vary depending on a number of details, such as the child's recollection of the events and level of comfort with the interviewer. (*Id.* at 298).

{¶67} After reviewing the record we find that Bradshaw's convictions for rape are supported by sufficient evidence. Although A.S. did provide a more detailed account of one of the counts of rape, the State presented sufficient evidence for the jury to find Bradshaw guilty of two counts of rape. A.S.'s testimony at trial and her statements to the forensic examiner in State's Exhibit 1 establish that the

conduct A.S. described occurred once in Keegan's bedroom and once in the living room of Bradshaw's house.

**{¶68}** Having determined that sufficient evidence supports Bradshaw's convictions for rape, we next turn to his argument that his second conviction for rape is against the manifest weight of the evidence. However, in making this manifest-weight argument, Bradshaw simply duplicates claims he made when challenging the sufficiency of the evidence supporting the same claims. His claims are not proper manifest-weight arguments, and in similar circumstances, we have refused to construct, and then analyze, a manifest-weight argument on behalf of the defendant. *See State v. Laws*, 3d Dist. Allen No. 1-20-10, 2021-Ohio-166, ¶ 32 (declining to construct and then resolve a manifest-weight argument where defendant's manifest weight argument was nothing more than a restatement of his earlier sufficiency-of-the-evidence argument). To the extent that Bradshaw argues that the evidence underlying the first conviction for rape is more detailed than the testimony underlying the second conviction for rape, we note that "the testimony of one witness, if believed, is sufficient to establish the elements of the offense." *State v. Martinez,* 3d Dist. Union Nos. 14-19-28 and 14-19-29, 2020-Ohio-4883, ¶ 25, citing *State v. Thompson*, 10th Dist. Franklin No. 16AP-812, 2017-Ohio-8375, ¶ 5.

{¶69} Nonetheless, elsewhere in his appellate brief, Bradshaw argues that A.S.'s testimony is not credible because she admitted that she disclosed the abuse to support J.B.'s claim that Bradshaw sexually abused her.

{¶70} First, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Furthermore, a number of the State's witnesses, including individuals with extensive training conducting interviews with children, explained that it is not uncommon for a child to disclose sexual abuse to protect another child, especially a younger child. Regardless, upon review of the record, we do not conclude that the jury's witness-credibility determinations were unreasonable in light of the evidence presented at trial. Accordingly, the jury did not lose its way by choosing to believe A.S.'s testimony. Therefore, we conclude that Bradshaw's rape convictions are supported by legally sufficient evidence that is not against the manifest weight of the evidence.

{¶71} Bradshaw's fourth and fifth assignments of error are overruled.

### Assignment of Error No. VI

**Indefinite prison terms imposed under the Reagan Tokes Law violate the jury trial guarantee, the doctrine of separation of powers, and due process principles under the federal and state constitutions.**

{¶72} In his sixth assignment of error, Bradshaw argues that the indefinite sentence of incarceration imposed on Count Four pursuant to the Reagan Tokes Law is unconstitutional. Specifically, Bradshaw claims that these provisions violate the separation-of-powers doctrine, infringe on his right to due process, and violate his right to a jury trial.

{¶73} As this Court has noted in *State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, challenges to the Reagan Tokes Law do not present a matter of first impression to this Court. *Ball* at ¶ 59. "Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not facially violate the separation-of-powers doctrine or infringe on defendants' due process rights." *Id.*, citing *e.g., State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21. Further, for the reasons stated in *Ball*, the remaining constitutional issue under Reagan Tokes related to a jury trial is also unavailing. *Id.* at ¶ 61-63. Thus, on the basis of *Ball* and our prior precedent, we find no merit to Bradshaw's arguments.

{¶74} Bradshaw's sixth assignment of error is overruled.

{¶75} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment and sentence of the Logan County Court of Common Pleas.

*Judgment Affirmed*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**