[Cite as *State v. Lombardo*, 2024-Ohio-3155.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

PATRICK A. LOMBARDO,

    DEFENDANT-APPELLANT.

CASE NO. 1-23-61

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR2023 0001

Judgment Affirmed

Date of Decision: August 19, 2024

APPEARANCES:

    *Jeremy Masters* for Appellant

    *John R. Willamowski, Jr.* for Appellee

**WALDICK, J.**

**{¶1}** Defendant-appellant, Patrick Lombardo ("Lombardo"), brings this appeal from the August 17, 2023 judgment of the Allen County Common Pleas Court sentencing him to community control after he was convicted by a jury of Domestic Violence. On appeal, Lombardo argues that the trial court improperly permitted the introduction of "prior bad acts" evidence at the trial. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

**{¶2}** On February 16, 2023, Lombardo was indicted for Domestic Violence in violation of R.C. 2919.25(A)/(D)(3), a fourth degree felony due to Lombardo having been convicted of a prior offense of violence against a family or household member. Lombardo pled not guilty to the charge and proceeded to a jury trial, which was held May 30-31, 2023.

**{¶3}** At trial, evidence was presented that on December 22, 2022, Lombardo was living with his grandmother, Robin, at a residence in Lima. Robin had raised Lombardo since he was a child. Lombardo's uncle, Jamie, and Jamie's two sons, also lived in the residence. Lombardo slept in the downstairs bedroom while Robin slept on the living-room couch. Jamie and his children slept upstairs.

**{¶4}** Robin testified that on December 22, 2022, she was awakened by Lombardo spitting from his bedroom into the living room. Lombardo also started

yelling things that Robin did not "care to hear." (Tr. at 132). Robin told Lombardo that if he did not stop, she was going to call the police. According to Robin, Lombardo did not want her to call the police. When Robin began to call the police, Lombardo struck her in the face.

{¶5} Robin testified that Lombardo had never hit her before, but he had spit on her. Robin testified that Lombardo may have hit her more than once because she had a cut on her head from her glasses and she had marks on her face. However, she only definitively remembered one hit.

{¶6} Robin started screaming after she was hit by Lombardo. Robin's son, Jamie, heard the screaming and he came downstairs. Jamie saw Lombardo "on top of [Robin]" and he saw Lombardo "hit her one time in the face." (Tr. at 153). Jamie shoved Lombardo off of Robin and pushed him into the kitchen.

{¶7} Jamie testified that Lombardo slapped him in the face, so he hit Lombardo twice. Jamie testified that he blocked Lombardo in the kitchen until the police arrived.

{¶8} Robin called 911 twice and both calls were introduced into evidence. On the first call, Robin stated she was having problems at her house, then a loud screeching from a woman could be heard. The dispatcher was not able to get any further information from Robin on the first call.

{¶9} Robin called 911 again shortly thereafter, stating that Lombardo had "beat" her up. She stated that her son was getting him under control.

-3-

{¶10} An officer from the Lima Police Department responded to the scene. She observed Robin shaken and distraught. She spoke with Lombardo, who she described as defensive and aggressive. Lombardo denied striking Robin, stating that Jamie had actually hit her. Lombardo was adamant that Jamie was lying about the incident. The officer did not see any injuries on Lombardo, but she did observe some blood on Robin. However, Robin did not want to go to the hospital because she had defecated on herself during the incident. Robin did go to the hospital the next day.

{¶11} The parties stipulated that Lombardo had a prior conviction for an offense of violence against a family or household member. The jury ultimately found Lombardo guilty of Domestic Violence as charged.

{¶12} On August 17, 2023, the trial court filed a final judgment entry sentencing Lombardo to three years of community control. It is from this judgment that he appeals, asserting the following assignments of error for our review.

#### First Assignment of Error

**Patrick Lombardo was denied a fair trial and due process of law by the admission of unfairly prejudicial prior bad acts testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article 1, Section 16 of the Ohio Constitution, and Ohio Rules of Evidence 404(B).**

**Second Assignment of Error**

**Patrick Lombardo was denied a fair trial and due process of law by the admission of unfairly prior bad acts testimony, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article 1, Section 16 of the Ohio Constitution, and Ohio Rules of Evidence 403(A).**

{¶13} Due to the nature of the discussion, we elect to address the assignments of error together.

*First and Second Assignments of Error*

{¶14} In his first assignment of error, Lombardo argues that the trial court erred by permitting prejudicial "propensity" evidence contrary to Evid.R. 404(B). In his second assignment of error, Lombardo argues that even if the propensity evidence was admitted for a proper purpose, its probative value was substantially outweighed by its prejudicial effect, rendering it inadmissible pursuant to Evid.R. 403(A).

Standard of Review

{¶15} Generally a trial court has broad discretion regarding whether to admit or exclude evidence. *State v. Bradshaw*, 2023-Ohio-1244, ¶ 20 (3d Dist.). Thus a reviewing court will not reverse a trial court's evidentiary ruling absent an abuse of discretion that materially prejudices the other party. *Id.* citing *State v. Issa*, 2001-Ohio-1290. However, the specific admission of other-acts evidence under Evid.R. 404(B) also involves "a question of law." *State v. Hartman*, 2020-Ohio-4440, ¶ 22. We review questions of law de novo.

**{¶16}** Nevertheless, where no objection was made to purported improper "other acts" testimony, we review the matter for plain error. *Bradshaw* at ¶ 21. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 2002-Ohio-68. Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise. *State v. West*, 2022-Ohio-1556, ¶ 35-36.

Relevant Authority

**{¶17}** Evidence Rule 404(B)(1) provides that, "Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Evid.R. 404(B)(2), other-acts evidence may be admitted for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

**{¶18}** In *State v. Hartman*, 2020-Ohio-4440, the Supreme Court of Ohio provided a detailed, three-step framework for considering the admissibility of other-acts evidence under Evid.R. 404(B). In the first step, the trial court must require the proponent of the evidence to identify a specific purpose from those enumerated in Evid.R 404(B) for which the evidence is being admitted and then assess the relevance of the proffered evidence to that purpose. *Hartman* at ¶ 26. At this

juncture, trial courts should look to the materiality of the nonpropensity purpose for which the evidence is being introduced and must ensure that there is sufficient reason to believe the defendant actually committed the other wrongful act. *Id*. at ¶ 27-28. We review errors at step one de novo. *Id*. at ¶ 22; *State v. Roberts*, 2024-Ohio-1604, ¶ 67 (1st Dist.).

**{¶19}** Assuming the first test is met, at step two, trial courts must turn to Evid.R. 403(A) and weigh the prejudicial impact of admitting the evidence against its probative value to make a final determination as to whether the evidence comes in at trial.[1] *Hartman* at ¶ 29. This weighing process should be "robust" and should take into account the human predisposition to more heavily emphasize a record of wrongful acts in judging whether a new crime occurred. *Id.* Where the proponent of the evidence seeks to introduce it to prove an issue that is not actually in dispute at trial, the probative value of the evidence will be very slight, and thus the risk of prejudice is high. *Id.* at ¶ 31. We review errors at step two for an abuse of discretion. *Id*. at ¶ 30.

---

[1] Evidence Rule 403 reads:

> (A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

> (B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

{¶20} Finally, if the evidence meets these threshold inquires, trial courts admitting evidence of a defendant's other wrongful conduct under Evid.R. 404(B) should issue a carefully worded instruction that limits the jury's consideration of the evidence to the stated purpose for which it is admitted. *Hartman* at ¶ 34. The instruction must be tailored to the facts of the case and should "explain, in plain language, the purposes for which the other acts may and may not be considered." *Id.* at ¶ 70-71. Where the defendant requests the instruction, courts must give it. *Id.* at ¶ 67.

Analysis

{¶21} Lombardo argues that the trial court erred by permitting his grandmother, Robin, to testify that Lombardo had spit on her in the past. He argues that although this testimony was not specifically solicited by either party, it was still inadmissible under Evid.R. 404(B) and Evid.R. 403 and it should have been excluded from evidence. In order to evaluate Lombardo's arguments, we must review the testimony that he claims was improperly admitted.

{¶22} Robin was the first witness called by the State. During her testimony, the following exchange occurred:

Q. [Prosecutor] And that's kind of what led you to call the police the
first time?

A. [Robin] I was asleep and I got woke up.

Q. Okay. How'd you get woken up?

A. I think he was spitting.

Q. Spitting?

A. Spitting out of his door, you know, he's just – his door was open, he was spitting out into the living room.

Q. Okay and so that wakes you up. Do you have a conversation with [Lombardo]? Do you remember?

A. I told him I was going to call the police.

Q. Okay and I believe you already testified, you said he responded 'I don't want you to call the police'?

A. He – he didn't want me to call the police.

Q. But you do eventually and then…

A. After he hits me because he's never hit me before. He's spit on me.

(Tr. at 136-137).

{¶23} These were the first instances during Robin's testimony where she mentioned Lombardo spitting. The prosecutor did not ask any further questions about Lombardo spitting and Robin did not mention spitting again during direct examination. However, during Robin's cross-examination, the following exchange occurred:

Q. Alright. And then, um, you said – when you testified you said that you called the police after he hit you?

A. Yeah.

Q. And you said that was one time with an open hand?

A. He – yeah.

-9-

Q. Okay. And then...

A. He spit on me and everything before though, it's not just been with his hands. He has a problem with spitting.

Q. You're saying that he hit you one time, physical contact was one time, with an open hand?

A. Yeah.

Q. Okay. And then you said that you didn't call police until after that happened?

A. Yeah because he's never hit me like that. He's spit on me. That's as far as he'd go – he'd go.

* * *

Q. How many…you just remember one? Okay.

A. Okay. But he also spits. He spit – he spit in my face before.

Q. I'm talking about this night. All you remember happening is one open hand strike your head is what you're saying?

A. I heard somebody spit – spit too. He would open his door sometimes and spit out into the living room.

Q. Okay. No further questions.

(145-146).

{¶24} These passages constitute the entirety of the testimony relatedly to Lombardo "spitting." Notably, neither party objected to the testimony regarding Lombardo spitting or moved to strike Robin's responses related to Lombardo spitting.

**{¶25}** Nevertheless, after Robin's son Jamie testified, the trial court gave the following instruction to the jury, without being prompted by either party:

> THE COURT: Folks, uh, ladies and gentleman of the jury while the other witness is coming in I just want to give you another instruction. You've heard some evidence from the last couple witnesses about other acts or other things that had happened. That evidence of other acts, of other things that have happened, is not admissible to prove the character of the defendant in this case in order to show that he acted in conformity with those other acts.
>
> That evidence is admissible and you can use it to show for example opportunity, intent, knowledge, or identity. Other than that you can't use it to show again that he had certain character and that he acted in conformity with that character in this particular case, okay.

(Tr. at 160-161).

**{¶26}** Despite the trial court providing a curative instruction, Lombardo argues that the trial court erred by permitting testimony that he had previously spit on Robin. In reviewing Lombardo's argument, we emphasize that Robin first mentioned "spitting" because that was how she was awakened in the early morning hours—by Lombardo spitting into the living room where she slept. It was also part of the reason she threatened to call the police. This forms the immediate background of the offense, and thus we find no error with admitting this particular statement, let alone prejudicial error. *See State v. Lowe*, 69 Ohio St.3d 527, 531 (1994).

**{¶27}** As to Robin's other testimony regarding spitting, it could have been admissible to show "absence of mistake" or "lack of accident" under Evid.R. 404(B). During closing arguments Lombardo's attorney opined that perhaps Robin

-11-

was struck in the face while Lombardo was attempting to knock the phone out of her hand because he did not want her to call the police. If this was true, then he was, arguably, not acting "knowingly," which is an essential element of Domestic Violence pursuant to R.C. 2919.25. Thus the testimony regarding Lombardo spitting on Robin in the past could have been admissible to undercut Lombardo's theory of "accident." *See Hartman* at ¶ 55 (stating that in a specific intent crime, specific intent becomes a material issue in the case).

**{¶28}** Nevertheless, we emphasize that even if the testimony related to Lombardo spitting on Robin in the past should not have been admitted, we find no plain error here that would warrant reversal. The trial court specifically instructed the jury not to consider other-acts evidence for character propensity purposes. A jury is presumed to follow a trial court's instruction. *State v. Jones*, 2001-Ohio-57.

**{¶29}** Moreover, Robin was on the phone with the police when she was hit by Lombardo. Her scream could be heard on the recording that was introduced into evidence. In addition, Robin testified about the incident and her son Jamie also observed Robin being hit by Lombardo. Robin had an injury on her face from the strike. Thus even if there was an error here under either Evid.R. 404(B) or Evid.R. 403, we do not find that the admission of the testimony created a manifest miscarriage of justice. *See State v. Perry*, 2004-Ohio-297, ¶ 14 (indicating that plain

error should only be utilized to correct a manifest miscarriage of justice).[2] Both the direct and circumstantial evidence presented at trial strongly support a conviction here. For all of these reasons, Lombardo's first and second assignments of error are overruled.

*Conclusion*

{¶30} Having found no error prejudicial to Lombardo in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and MILLER, J.J., concur.**

**/jlm**

---

[2] Had defense counsel made an objection to the testimony, the review would have been subject to a harmless error analysis. Generally, "when Evid.R. 404(B) evidence is improperly admitted at trial [the real issue] is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error." *State v. Morris*, 2014-Ohio-5052, ¶ 25. Even under a harmless error review, a review of the evidence shows that any error would be harmless beyond a reasonable doubt.