[Cite as *State v. Heckler*, 2025-Ohio-1888.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 7-24-08

V.

DEREK A. HECKLER,

OPINION AND
JUDGMENT ENTRY

    DEFENDANT-APPELLANT.

Appeal from Henry County Common Pleas Court
Trial Court No. 24 CR 0024

**Judgment Affirmed**

**Date of Decision: May 27, 2025**

APPEARANCES:

    *Brian A. Smith* for Appellant

    *Gwen Howe-Gebers* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Derek A. Heckler ("Heckler"), brings this appeal from the June 26, 2024, judgment of the Henry County Common Pleas Court sentencing him to prison after he was convicted by a jury of Extortion, Trespass in a Habitation Where a Person is Likely to be Present, three counts of Sexual Battery, Violating a Protection Order, and Obstructing Official Business. On appeal, Heckler argues that the trial judge demonstrated bias during plea negotiations and Heckler's trial counsel was ineffective for failing to file an "Affidavit of Disqualification" with the Supreme Court of Ohio. In addition, Heckler argues that his convictions were against the manifest weight of the evidence, and that the trial court did not make the required findings pursuant to R.C. 2929.14(C)(4) to impose consecutive sentences at the sentencing hearing. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On February 28, 2024, Heckler was indicted for Extortion in violation of R.C. 2905.11(A)(5), a third degree felony (Count 1); Trespass in a Habitation Where a Person is Likely to be Present in violation of R.C. 2911.12(B), a fourth degree felony (Count 2); Violating a Protection Order in violation of R.C. 2919.27(A)(2), a first degree misdemeanor (Count 3); three counts of Sexual Battery in violation of R.C. 2907.03(A)(1), all third degree felonies (Count 4-6); and

Obstructing Official Business in violation of R.C. 2921.31(A), a fifth degree felony (Count 7). Heckler pled not guilty to the charges.

**{¶3}** On May 9, 2024, Heckler proceeded to a jury trial wherein he was convicted of Counts 1-6, and a lesser-included version of Count 7, Obstructing Official Business as a second degree misdemeanor. On June 25, 2024, Heckler was sentenced to serve an aggregate 6-year prison term.[1] A judgment entry memorializing his sentence was filed June 26, 2024. It is from this judgment that he appeals, asserting the following assignments of error for our review.

### First Assignment of Error

**Because the trial judge demonstrated bias and prejudice toward Appellant in comments made during plea negotiations, and prior to Appellant's trial, the failure of Appellant's trial counsel to file an Affidavit of Disqualification with the Ohio Supreme Court, pursuant to R.C. 2701.03, constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

### Second Assignment of Error

**Because the jury lost its way and created a manifest miscarriage of justice in convicting Appellant, Appellant's convictions were against the manifest weight of the evidence.**

---

[1] The breakdown of Heckler's sentence is contained in the analysis of the third assignment of error.

**Third Assignment of Error**

**Because the trial court did not make the required findings, pursuant to R.C. 2929.14(C)(4), to impose consecutive sentences, the trial court's sentence of Appellant was contrary to law.**

*First Assignment of Error*

{¶4} In his first assignment of error, Heckler contends that he received ineffective assistance of trial counsel because his trial counsel did not file an "Affidavit of Disqualification" with the Supreme Court of Ohio seeking to remove the trial judge for purported bias.

Standard of Review

{¶5} To prove ineffective assistance of counsel, the defendant must satisfy a two-prong test; that counsel's performance has fallen below an objective standard of reasonable representation, and that he was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, at paragraph two of the syllabus (1989). To demonstrate prejudice, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Id.*, paragraph three of the syllabus. Notably, in Ohio, a properly licensed attorney is presumed to be competent and the burden is on the defendant to prove otherwise. *State v. Hamblin*, 37 Ohio St.3d 153, 155 (1988). Moreover, counsel is not deemed deficient for failing to file meritless motions. *State v. Kelley*, 2008-Ohio-6598, ¶ 76 (7th Dist.).

Analysis

**{¶6}** Revised Code 2701.03 governs the issue of judicial bias related to a common pleas court judge. It reads, in pertinent part, as follows:

> (A) If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.

The preceding statutory subsection makes it clear that generally the determination of a claim that a common pleas judge is biased is within the exclusive jurisdiction of the Chief Justice of the Supreme Court of Ohio or her designee. *State v. Bender*, 2021-Ohio-1931, ¶ 18 (3d Dist.). It is important to emphasize that this is the *only* avenue to disqualify a common pleas court judge and a defendant cannot forgo this procedure and present it to the court of appeals "in order to avoid Supreme Court jurisdiction." *State v. Corchado*, 2017-Ohio-4390, ¶ 13 (7th Dist.).

**{¶7}** As this Court has previously stated when addressing allegations that a trial judge should have been disqualified, "a court of appeals is without the authority to determine whether a judge of the court of common pleas is, or should be, disqualified from presiding over a case." *State v. Milligan,* 2008–Ohio-4509, ¶ 11

(3d Dist.); *State v. Holdcroft*, 2010-Ohio-6262 (3d Dist.). Thus we lack the authority to decide whether the trial judge should have been disqualified.

{¶8} Notably, there is an exception to the general rule stated above. We have held that a "due process issue may still exist" because a criminal trial before a "biased" judge is fundamentally unfair. *Bender* at ¶ 19. Accordingly, appellate courts "ha[ve] the authority to review a claim of judicial bias as it impacts the outcome of the case." *State v. Loudermilk*, 2017-Ohio-7378, ¶ 18 (1st Dist.). In this analysis, "[t]rial judges are presumed to be fair, impartial and unbiased." *In re A.H.*, 2019-Ohio-4063, ¶ 65 (8th Dist.). For this reason, "the appearance of bias or prejudice must be compelling to overcome these presumptions." *Matter of C.S.*, 2003-Ohio-3754, ¶ 24 (4th Dist.); *State v. Dixon*, 2025-Ohio-326 (3d Dist.).

{¶9} Heckler attempts to subvert the jurisdictional barrier of judicial disqualification by arguing that his counsel was ineffective for failing to file an "Affidavit of Disqualification" with the Supreme Court of Ohio in accordance with R.C. 2701.03(A). He argues that his trial counsel mistakenly filed a "Motion" in the common pleas court seeking the trial judge to recuse herself "[b]ased on conversations in chambers, it may be that this matter has been pre-Judged by her honor, without any presentation of evidence via sentencing or a PSI." He contends that had his trial counsel filed his motion in the Supreme Court of Ohio, it would have been granted.

{¶10} Again, we generally have no jurisdiction to determine the disqualification of a trial judge under R.C. 2701.03(A). Nevertheless, to the extent that Heckler contends that his argument should fall outside of R.C. 2701.03(A) into a due process exception regarding "bias," we find that his claims are unsupported by the record.

{¶11} The trial court held a hearing on Heckler's "motion" and explained Heckler's issue. Heckler's attorney and the prosecutor had been talking about potential plea negotiations in chambers with the trial court judge and the parties were apparently close to an agreement that contained a jointly recommended sentence of community control. However, the State indicated to the trial court that the victim did not support the recommended sentence. Because of this discrepancy between the State's recommendation and the victim's desires, the trial court indicated that Heckler should be made aware that any sentencing recommendation was not binding on the trial court. The trial court indicated that before imposing any sentence it would examine any evidence presented, any PSI produced, and consider the requisite sentencing statutes.

{¶12} Heckler contends that the trial court's statements amounted to bias because he felt it seemed the trial judge was stating she would not accept a plea resulting in community control. Contrary to his argument, the trial judge's statements only emphasized that she would review all the material and that she had

not prejudged any part of the case. Thus Heckler has not demonstrated any bias, and he has not demonstrated any prejudice by the judge presiding over his case.

{¶13} In sum, we generally do not have jurisdiction to determine the disqualification of a trial judge. There are exceptions, such as when a defendant's due process rights are violated by a judge's demonstration of bias, but Heckler has not demonstrated any prejudicial bias here such that his counsel was ineffective for failing to file an Affidavit of Disqualification in the Supreme Court of Ohio. Therefore, Heckler's first assignment of error is overruled.

*Second Assignment of Error*

{¶14} In his second assignment of error, Heckler argues that his convictions were against the manifest weight of the evidence.

Standard of Review

{¶15} When reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 1997-Ohio-52. In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* When applying the manifest-weight standard, "[o]nly in exceptional

-8-

cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

## Controlling Statutes

**{¶16}** Heckler was convicted of the following crimes: Extortion in violation of R.C. 2905.11(A)(5); three counts of Sexual Battery in violation of R.C. 2907.03(A)(1); Trespass in a Habitation where a Person is Likely to be Present in violation of R.C. 2911.12(B); Violating a Protection Order in violation of R.C. 2919.27(A)(2); and Obstructing Official Business in violation of R.C. 2921.31(A). These statutory subsections read as follows:

**Extortion**

(A) No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following:

* * *

(5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit.

R.C. 2905.11(A)(5).

**Sexual Battery**

(A) No person shall engage in sexual conduct with another when any of the following apply:

(1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.

2907.03(A)(1).

**Trespass in a Habitation where a Person is Likely to be Present**

(B) No person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.

R.C. 2911.12(B),

**Violating a Protection Order**

(A) No person shall recklessly violate the terms of any of the following:

* * *

(2) A protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code;

R.C. 2919.27(A)(2).

**Obstructing Official Business**

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

R.C. 2921.31(A).

Evidence Presented

{¶17} Heckler and the victim, K.S., began a sexual relationship in early 2023. K.S. testified that after about a month, Heckler began exhibiting controlling behaviors such as telling her that she had to limit the time she could spend with friends. K.S. testified that during one argument she wanted to be done with the relationship but Heckler threatened to kill himself if she ended things. The argument became so loud that the police were called. Heckler, who struggled with drug addiction, was subsequently taken to a "sober house."

{¶18} Over the next several months, K.S. tried to support Heckler while he was in various rehab programs; however, Heckler kept either leaving the programs or being "kicked out." K.S. detailed four different institutions that Heckler failed to get sober in. During this time period K.S. offered financial and emotional support.

{¶19} K.S. testified that Heckler began to threaten to send videos of their sexual encounters to friends and family if K.S. did not do what he wanted. K.S. testified that the videos were originally filmed consensually but she was terrified of them being sent to people she knew. K.S. testified that she ended the romantic relationship with Heckler while he was still in an institution. After ending the relationship, Heckler continued to call K.S., but she answered less frequently.

{¶20} Heckler was released from "CTF" a "correctional treatment" institution on August 15, 2023. At that time, K.S. was in a new relationship with a different man. K.S. testified that Heckler called her on August 15, 2023, and told

her he had been released. K.S. testified that she did not want Heckler at her residence, but Heckler told her if she spent two hours with him she could have his phone to delete the sexual videos.

{¶21} K.S. drove and picked up Heckler and brought him to her residence. She testified that she knew Heckler wanted to rekindle the relationship but she was not interested in it. Rather, she only wanted his phone.

{¶22} K.S. testified that on August 15, 2023, Heckler refused to leave after the two hours elapsed so K.S. left and went to her boyfriend's house. At that time, K.S.'s boyfriend was aware that K.S. had dated Heckler, but not that Heckler was at her residence.

{¶23} K.S. did not plan to return to her residence on August 16, 2023, but late that evening Heckler told her that her cat was dying so she went home. K.S. learned that her cat was fine, but she and Heckler argued then went to bed.

{¶24} K.S. testified that the next day, August 17, 2023, she continued to argue with Heckler, who kept attempting to extend his stay, claiming that he could not stay with family. K.S. testified that at one point on August 17, 2023, Heckler wanted to have sex. K.S. testified that she did not want to, and she cried, but Heckler said he would kill himself if she did not have sex with him. K.S. testified that Heckler also used threats of sending the videos to her family if she did not have sex with him. K.S. testified that she had vaginal sex with Heckler that night, but only because of Heckler's threats.

{¶25} The next day, K.S. testified that Heckler used the same threats to coerce her into having vaginal sex again, and, a separate instance of anal sex. She testified that Heckler threatened numerous times to kill himself and to release the videos to her family if she did not comply.

{¶26} On August 19, 2023, K.S. testified that she talked to Heckler's aunt, trying to get Heckler out of her house. Heckler's aunt told him to leave, but he did not. K.S. testified that at one point when Heckler left the room, she broke his cell phone, snapping it in half. Heckler told her he had another phone with the sexual videos on it. K.S. then decided she would leave so she went with her boyfriend to Michigan and told him everything that had been going on.

{¶27} While she was in Michigan with her boyfriend, Heckler began sending messages to K.S.'s boyfriend on Facebook, sending photographs of K.S. in bed that he had taken during the last few days. K.S. testified that after talking with her boyfriend, she decided to go to the police.

{¶28} Law enforcement officers went to K.S.'s residence and found Heckler standing outside the residence. When they tried to approach him, Heckler ran. He was not caught that night. Hecker's ID card and his smashed phone were on the counter in K.S.'s residence.

{¶29} On August 21, 2023, K.S. obtained a protection order against Heckler pursuant to R.C. 2903.213(G)(3). The State presented evidence that Heckler used

another inmate's tablet to contact K.S. on six occasions on August 26, 2023, and August 27, 2023, despite the protection order being in place.

Analysis

**{¶30}** In his assignment of error, Heckler argues that K.S. was not a credible witness because she had a motive to lie. Specifically, he contends that K.S. could have been lying so that her boyfriend would not know she had sex with Heckler. He also argues that K.S.'s testimony was not corroborated by any physical evidence. Further, he argues that he did not "trespass" in K.S.'s residence by force, stealth, or deception. We will address each of his convictions in turn.

**{¶31}** Dealing first with the three convictions for Sexual Battery, K.S. was clear in her testimony describing at least two instances of vaginal intercourse, and one instance of anal intercourse that occurred on August 17-18, 2023. K.S. testified that she did not want to engage in sexual conduct with Heckler but she was coerced by Heckler claiming that he would kill himself and/or that he would send their recorded sexual encounters to her family.[2]

**{¶32}** Heckler argues that K.S. was not credible, and that even if she was, any threats made would not have coerced "a person of ordinary resolution." However, it is well-settled that a verdict is not against the weight of the evidence because the jury believed the State's version of events over that of the defendant.

---

[2] K.S. testified that Heckler had also secretly recorded her complaining about her family members and he threatened to send those recordings to her family as well.

*State v. Bradshaw*, 2023-Ohio-1244, ¶ 70 (3d Dist.). Moreover, the jury was instructed on the elements of Sexual Battery and determined that the threats herein would have coerced a person of ordinary resolution. After reviewing all of the evidence presented, we do not find that the jury clearly lost its way or created a manifest miscarriage of justice by convicting Heckler for three counts of Sexual Battery. *Id.*

{¶33} We turn next to Heckler's conviction for Extortion. Heckler argues again that K.S. was not credible, and that there was no evidence to support her claims that she was threatened with the release of videos of sexual encounters. While it is true that K.S.'s testimony was not corroborated by the alleged videos being produced at trial, there was some testimony to explain this. A law enforcement officer testified that there were no experts in the area who could extract videos from the broken phone. Moreover, Heckler also threatened to release non-sexual videos where he had recorded K.S. stating negative things about her family. Simply put, the lack of corroborating video evidence does not render the Extortion conviction to be against the manifest weight of the evidence.

{¶34} With regard to his conviction for Violating a Protection Order, there was clear testimony and documentation that K.S. received a criminal protection order against Heckler pursuant to R.C. 2903.213. The protection order was obtained August 21, 2023, and it was entered into evidence. K.S. testified that Heckler attempted to contact her numerous times after the order was obtained, including

repeatedly from another inmate's tablet. This testimony was corroborated by an investigator who looked into the matter and saw from the recorded calls Heckler was trying to contact K.S. Based on the evidence presented, we do not find that Heckler's conviction for Violating a Protection Order was against the manifest weight of the evidence.

{¶35} Next, Heckler argues that his conviction for "Trespass in a Habitation" was against the manifest weight of the evidence because the evidence did not establish that he trespassed without privilege to do so, or that he used force, stealth, or deception to gain access to K.S.'s residence. Contrary to his argument, Heckler was only permitted in the residence on August 15, 2023, provided that he leave after two hours and delete the sexual encounters from his phone. Testimony reflected that Heckler had no intention of only staying for two hours and that he was clearly attempting to manipulate the situation. Then, in the coming days, K.S. testified that she asked Heckler to leave multiple times or to be gone when she returned and he still stayed there, threatening to release the videos he had of her. This testimony all supports the "Trespass in a Habitation" conviction.

{¶36} Finally, Heckler argues that his conviction for Obstructing Official Business was against the manifest weight of the evidence because Heckler was "not guilty of trespass in the residence" so the "pursuit" of Heckler by police was not an authorized act under R.C. 2921.31. We have already determined that the Trespass

conviction is not against the weight of the evidence, so he has no foundation to his argument. Therefore, it is not well-taken.

{¶37} After reviewing all the evidence, we do not find this is one of the "exceptional" cases where the evidence weighs heavily against the convictions. Therefore, Heckler's second assignment of error is overruled.

### *Third Assignment of Error*

{¶38} In his third assignment of error, Heckler argues that the trial court did not make all of the required findings at the sentencing hearing to impose consecutive sentences in this matter.

### Standard of Review

{¶39} Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, otherwise modify, or vacate a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

**{¶40}** "Except as provided in ... division (C) of section 2929.14, ... a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). In pertinent part, R.C. 2929.14(C) provides:

> (4) ... [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶41}** Thus, when imposing a consecutive sentence, R.C. 2929.14(C)(4) requires the trial court to make specific findings on the record. *State v. Hites*, 2012-

Ohio-1892, ¶ 11 (3d Dist.). "Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies." *State v. Runyon*, 2024-Ohio-5039, ¶ 23 (3d Dist.). Further, the trial court must state the required findings at the sentencing hearing and incorporate those findings into its sentencing entry. *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. Importantly, the trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Id*.

## Analysis

**{¶42}** Heckler argues that the trial court failed to make all of the required findings at the sentencing hearing to impose consecutive sentences. Specifically, he contends that the trial court failed to find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." He argues that the trial court's analysis at the sentencing hearing thus did not reflect a consideration of proportionality as required under R.C. 2929.14(C)(4). Notably, Heckler concedes that the trial court did make a proportionality finding in its sentencing entry (in addition to the remaining

required findings). Thus he argues that the error was confined to the sentencing hearing itself.

**{¶43}** When imposing the sentence in this case, the trial court stated as follows:

> The Court has considered the overriding principles and purposes of sentencing under 2929.11 as well as the relevant factors under 2929.12, in particular in considering those factors the Court finds that the victim suffered serious physical and psychological harm as a result of these incidents, that your relationship with the victim in this case facilitated that offense and was used to perpetrate these offenses. The Court would also find that you have a substantial criminal record, there is no doubt about that. You were on community control when this offense occurred, you have a pattern of drug use that you have refused to acknowledge or obtain treatment for. The Court further finds that after considering these factors a combination of community control sanctions would demean the seriousness of your conduct and its impact on the victim and a sentence of imprisonment is commiserate [sic] with the seriousness of your conduct and its impact on the victim. The Court will order that as a result of your conviction of Count Four, Sexual Battery the Court will hereby sentence you to a period of two years, as a result of your conviction on Count Five, Sexual Battery the Court will sentence you to a period of two years and for Count Six the Court is going to sentence you to two years for that Sexual Battery. The Court finds pursuant to 2929.14(C)(4) that since I am sentencing you to prison on multiple counts the Court will find that these offenses were committed as part of, it may have been considered one continuous event but these were separate incidents, separate sexual offenses that each time included substantial harm to the victim and it would be different if this was a one-time thing, it was a three time thing and I don't feel that a concurrent sentence would be appropriate under those circumstances. Your criminal history also demonstrates that consecutive sentences are necessary to protect the public and particularly this victim. Therefore the Counts Two, Four and Five will be served consecutively to each other for a total of six

years. As a result of the Extortion on Count One you will again be sentenced to two years in prison, however, that count will be concurrent with the other three counts. As a result of Trespass in a Habitation you will be sentenced to twelve months in prison, that count is concurrent, as a result of Violating the Protection Order you will be sentenced to 180 days, as a result of Obstruction of Official Business you will be sentenced to 90 days, those days are concurrent with the others. Taking all of these concurrent and consecutive accounts together you are sentence to a period of imprisonment of six years.

(June 25, 2024, Tr. at 8-10).

**{¶44}** The trial court's analysis reflects clear consideration of R.C. 2929.14(C)(4). The trial court made the first required finding that consecutive sentences are necessary to protect the public. As to the second required finding, it is true that the trial court did not use the precise language of the statute to find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." However, the trial court did reference the "seriousness" of Heckler's conduct and the trial court indicated that a concurrent sentence would not be appropriate under these circumstances, indicating that the trial court had weighed some measure of proportionality, albeit not using that precise word "proportionality." As we stated previously, the trial court is not required to provide a "talismanic" recitation of the words in the statute. *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. Thus the trial court's failure to use the word "proportionality" does not render its findings incomplete. Finally, the trial court

determined that multiple factors under R.C. 2929.14(C)(4) applied, and those are supported by the record.

{¶45} After reviewing the trial court's analysis, we find that Heckler has not demonstrated by clear and convincing evidence that the trial court failed to make the required findings at the sentencing hearing under R.C. 2929.14(C)(4) to impose consecutive sentences. Therefore, we do not find that his consecutive sentences were clearly and convincingly contrary to law. Accordingly, his third assignment of error is overruled.

*Conclusion*

{¶46} Having found no error prejudicial to Heckler in the particular assigned and argued, his assignments of error are overruled and the judgment of the Henry County Common Pleas Court is affirmed.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 7-24-08

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Juergen A. Waldick, Judge

Mark C. Miller, Judge

John R. Willamowski, Judge

DATED:
/jlm

-23-